R. L. WILLIAMS, Chief Justice.
JESSE J. DUNN,
SAMUEL W. HAYES,
MATTHEW JOHN KANE, } Justices.
JOHN B. TURNER,

---

BRYAN v. MENEFEE, *State Treasurer.*

No. 124.   Opinion Filed April 27, 1908.

(95 Pac. 471.)

1. **STATUTES—One or More Subjects—Appropriations.** Before provision can be made in the general appropriation bill for the compensation of any officer or employe in the executive, legislative, or judicial departments of the state, the office must first have been created and the salary or compensation fixed, or the employment authorized, and the compensation provided for either therein or in a separate bill.

2. **SAME.** An appropriation to cover compensation of employes in the executive, legislative, or judicial departments of the state, where such employment had not been authorized by statute and their compensation fixed prior to the passage of such general appropriation bill, can only be enacted as a separate appropriation bill, embracing but one subject.

3.    **SAME.**   An appropriation made by a separte bill containing but one subject, providing for the contingent expense of a state officer, is valid and a warrant properly drawn against such contingent fund to pay for clerical assistance for such officer is valid.

4.    **STATES—Issuance of Warrant—Effect as Creating Debt—"Indebtedness."**   Where a warrant issued for the payment of money by the proper officer by virtue of a valid appropriation, where the money is already in the treasury, or where the tax levy has already been made, with provision for the collection of same, and such warrant was issued on such fund in the treasury and would be supplied by such tax, the issuance of such warrant did not create an indebtedness within the meaning of section 29, art. 10, of the Constitution.

5.    **SAME—"Evidence of Indebtedness."**   The words "evidence of indebtedness," as used in section 29, art. 10, of the Constitution, mean such indebtedness as is usually evidenced by a bond.

(Syllabus by the Court.)

Original proceeding for mandamus by A. D. Bryan against J. A. Menefee, State Treasurer.   Writ awarded.

This is an application for writ of mandamus to compel the respondent, J. A. Menefee, State Treasurer, to pay auditor's warrant No. 669, for the sum of $50, issued to the relator by the State Treasurer, the respondent herein, for payment of salary as bookkeeper in said Treasurer's office.   The Treasurer refused to pay said warrant for the reason that the Attorney General of the state had not certified that the warrant was a valid indebtedness against the state as required by section 29, art. 10, of the Constitution.

The relator in his petition alleges that on the 17th day of January, 1908, M. E. Trapp, Auditor of State, made, issued, and delivered to the relator his warrant No. 839, Series A, for the sum of $50, directing the respondent, the Treasurer of the state of Oklahoma, to pay the sum named in said warrant to himself for services rendered as bookkeeper in the office of said respondent.   That said warrant was presented to the respondent, Treasurer as aforesaid, January 17, 1908, and the same was "not paid for want of funds," as claimed by said Treasurer.   A copy of said warrant is attached

to said application and made a part thereof, and marked "Exhibit A," and is in words and figures as follows:

"Warrant. No. 839. Series A. Claim No. 413. $50.00. Treasurer of the State of Oklahoma. Auditor's Office, Guthrie, Okla., Jan. 17th, 1908. Great Seal of the State of Oklahoma. Pay to A. D. Bryan, ——————— or bearer the sum of fifty and no 100 ——— dollars per salary part payment bookkeeper for Treasurer out of any funds appropriated for such purpose. By order of the State Auditor. M. E. Trapp, Auditor. Carl L. Rice, Assistant Auditor."

Said warrant is indorsed on the back with words and figures as follows, to wit:

"Register No. 669. Presented and not paid for want of funds. January 17th, 1908. J. A. Menefee, State Treasurer."

That on April 7, 1908, plaintiff again presented the said warrant to respondent at his office in the city of Guthrie, and demanded payment of same and payment thereof was refused by the respondent as such Treasurer, in a letter addressed to relator, a copy of which is attached to relator's application and designated as "Exhibit B" and made a part thereof. Said letter is in words and figures as follows:

"Mr. A. D. Bryan, Guthrie, Oklahoma—Dear Sir: I regret to inform you that I cannot honor and pay Auditor's warrant No. 839 issued to you January 17th, 1908, for the sum of fifty dollars and payable out of the General Revenue Fund belonging to the state. Ample funds are in my custody to pay the same, but I am compelled to refuse payment for the reason that the warrant is not approved or countersigned by the Attorney General of the state, as is required by the Constitution, otherwise the warrant is in due form, and if not for this omission I would have been more than pleased to have honored and paid the same. Very respectfully, [Signed] J. A. Menefee, State Treasurer."

Relator further alleges that respondent has ample funds in his custody as such treasurer to pay said warrant, and that it was his plain duty under the law to pay said warrant, but that the respondent wrongfully and unlawfully and to the great and irreparable injury of the relator failed and refused and still fails and refuses

to pay said warrant. Relator further alleges that he has no adequate remedy in the ordinary course of law to compel the respondent to discharge his plain duty as enjoined by law. This action was instituted on the 7th day of April, and on the same date respondent entered his appearance and as a matter of record agreed that all process and notice should be waived, and because of the general public importance of an early determination of the question involved the court is hereby requested to advance said case on the docket and set the same down for hearing at as early a date as convenient. Afterwards respondent filed a demurrer to, relator's petition, and on the 10th day of April this cause was heard in this court on demurrer.

*Joseph Wisby,* for relator.
*G. A. Henshaw, Asst. Atty. Gen.,* for respondent.

WILLIAMS, C. J. (after stating the facts as above). The first question that would necessarily arise would be as to whether or not the State Auditor had authority to issue this warrant. It appears from the relator's petition that the warrant was issued in part payment of the services of the relator as bookkeeper in the office of the State Treasurer. The position of bookkeeper for the State Treasurer's office is not one that is created by virtue of the Constitution or any statute in force in this state. Section 56, art. 5, of the Constitution (Bunn's Ed. § 129), provides:

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative and judicial departments of the state, and for interest on the public debt. The salary of no officer or employe of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employe, unless his employment and the amount of his salary, shall have already been provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

Under this provision the office or position of bookkeeper for the State Treasurer not having been created by the Constitution or laws now in force in the state of Oklahoma, no provision could be

made to cover the compensation therefor in the general appropria-
tion bill until such office shall have been created or such employ-
ment provided for by law, and the amount of salary or compensation
likewise provided in such act, or in a separate act therefor. Section
56, supra, of the Constitution is taken literally from the Alabama
Constitution. See section 71, art. 4, said Constitution 1901. Whilst
such provision has never been construed as we are able to find by
the Supreme Court of said state, a legislative construction has been
made in said state to the same effect. By reference to the acts of
the Legislature subsequent to the adoption of said Constitution. it
will be observed that before appropriations for the compensation
of any officer or the employment of any person in any department
is made, in the general appropriation bill, the office must first be
created and the salary fixed, or the employment or compensation
provided for. See General Acts Ala. 1907, pp. 130-135, inclusive.

It was evidently the intention of the constitutional convention
that the general appropriation bill, excepting interest on the public
debt, should embrace nothing but items for the executive, legislative,
and judicial departments, covering the officers and employes
thereof, where the office or employment had already been provided
for, and the salary or compensation fixed by law prior to the passage
of such general appropriation bill. An appropriation to cover com-
pensation of employes in the executive, legislative, or judicial
departments, not prior to that time authorized by law and their
compensation also fixed, can only be enacted as a separate appro-
priation bill embracing but one subject.

On December 21, 1907, an act entitled, "An act making appro-
priation for the payment of salaries and contingent expenses of the
state officers" with an emergency declared, was passed, section 1 of
which is in words and figures as follows:

"There is hereby appropriated out of any money in the State
Treasury not otherwise appropriated to pay the salary of state
officers as provided by the Constitution, and for contingent
expenses, the sum of twenty-five thousand dollars, to be paid by the
State Treasurer by warrant drawn by the Auditor in such sum as

shall be fixed by the Governor." (Session Laws, 1907-08, p. 26, House Bill No. 147.)

If this warrant, and we so assume, was issued for the payment of relator's salary as bookkeeper as a part of the contingent expenses of such state officer out of this appropriation which is made by a separate bill, it would be valid, unless it was further necessary for the Attorney General to certify that the warrant is issued pursuant to law and is within the debt limit.

The next question arising is whether or not a warrant drawn by the proper officer on the Treasurer of the State under an appropriation by law is an evidence of indebtedness. In the case of *In re State Warrants*, 6 S. D. 521, 62 N. W. 102, 55 Am. St. Rep. 852, in construing sections 1 and 9 of article 11, and 1 and 2 of article 13, of the South Dakota Constitution, the court held:

"Appropriations from the assessed but uncollected revenues of the state, and the issuance of warrants in pursuance thereof to defray current expenses, is not the incurring of an indebtedness, within section 2, art. 13, Const., which provides that to make public improvements, or to meet extraordinary expenses, or deficits or failure in revenue, the state may contract debts never to exceed with previous debts, $100,000, and no greater indebtedness shall be incurred, except to repel invasion, suppress insurrection or defend the state or United States in war."

Section 23, art. 10, of our Constitution (Bunn's Ed. § 289), is substantially the same as section 2, art. 13, of the South Dakota Constitution, and in the same case the court further held:

"The fact that warrants issued in anticipation of such assessed revenues draw interest does not make the issuance of the warrants an incurring of indebtedness to the extent of such interest, within article 2, § 13, of said Constitution, where such warrants, with respect to interest, are not different from other warrants which may properly be drawn and issued."

Section 29, art. 10, Const. (Bunn's Ed. § 295), is substantially taken from the Constitution of North Dakota, with the exception that the Attorney General is inserted in our Constitution in lieu of the Secretary of State in the Constitution of that state.

In the case of *Darling v. Taylor,* 7 N. D. 540, 75 N. W. 766, the court says:

"Section 183 provides that the debt of a county shall never exceed 'five per centum of the assessed value of the taxable property therein'; and section 187 provides that 'no bond or evidence of debt of any county * * * shall be valid unless the same have indorsed thereon a certificate signed by the county auditor, or other officer authorized by law to sign such certificate, stating that said bond or evidence of debt is issued pursuant to law and is within the debt limit.' In the application of these provisions of the organic law to the facts in this record we are confronted with two questions, namely: First. Has the indebtedness of the county reached and already passed the constitutional limit? Second. Would the warrant in question, if issued, augment the indebtedness of the county within the meaning of the constitutional inhibition? The first of these questions is answered in the affirmative by the conceded facts in the record. The limit of indebtedness has been already reached in Kiddger county. Referring to the remaining question, it would seem at first blush that, if the county auditor should issue an additional warrant upon the treasurer, the same would necessarily augment the outstanding indebtedness of the county. But would this conclusion be true, within the meaning of the constitutional restriction upon county indebtedness? There is considerable authority, at least, which requires this query to be answered in the negative. The Supreme Court of Iowa has said: 'This right to thus apply the current revenues to the defraying of ordinary expenses is grounded upon the fact that such a course is absolutely necessary to the life of the municipality and the successful accomplishment of the purpose of its creation. * * * And, if the appropriation was made in advance of the receipt of the revenues, the action would be just as legitimate, because that the revenues will be received is a legal certainty.' The court further says: 'The right of the city to thus further apply its revenues notwithstanding its indebtedness is a part of the well-settled and expressly adjudicated law of the state.' (*Grant v. City of Davenport,* 36 Iowa, 396, and cases cited.) In *Spilman v. City of Parkersburg,* 35 W. Va. 605, 14 S. E. 279, referring to a constitutional restriction on municipal indebtedness similar to that of this state, the court uses this language: 'If it is an item of current expense or anything else for the payment of which provision has already

been made by levy laid, then it needs no other provision for its payment, and is not within the letter of the Constitution. Neither is it within its true meaning, for a draft on a fund already in hand, or by levy already made and provided meets it and discharges it, so that no indebtedness arises.' The precise question presented in this case has been repeatedly decided in South Dakota in harmony with the principle laid down in the cases cited. In *Lawrence County v. Meade County,* 10 S. D. 175, 72 N. W. 405, referring to an act of Congress which placed a restriction upon the indebtedness of territorial counties, the court says: 'Nor did it prevent a county, whose indebtedness exceeded the four per cent. limit when such an act was approved, from levying such taxes as it was authorized by law to levy, and issuing its warrants within the limits of such levy, in anticipation of their collection. If the warrants issued were within the amounts lawfully levied, they did not increase the municipal indebtedness within the meaning of such act. Unless it affirmatively appears that the warrants issued in any year exceed in amount the levy for such year, they must be regarded as lawful claims against the county.' This language was used by the court with respect to county warrants which were issued after the county had reached the legal maximum of county indebtedness, and said warrants were declared to be valid nevertheless. The court cites in support of its views *Shannon v. City of Huron,* 9 S. D. 356, 69 N. W. 598. *In Re State Warrants,* 6 S. D. 518, 62 N. W. 101, 55 Am. St. Rep. 852, the court announces the same rule of construction in its opinion touching the constitutionality of a statute of South Dakota whereby certain state officials were expressly authorized to issue and sell state warrants to be drawn upon the assessed but uncollected revenues of the state, and the proceeds of which were to be applied to the discharge of necessary current expenses of the state. In the course of its opinion in the case last cited the court uses this language: 'It being once established, as we think it is, by the authorities already cited, that the revenues of the state assessed, and in process of collection, may be considered as constructively in the treasury, they may be appropriated and treated as though actually and physically there; and an appropriation of them by the Legislature does not constitute the incurring of an indebtedness, within the meaning of Const. art. 13, § 2.' "

All of article 10 of our Constitution pertaining to "public indebtedness" is substantially taken from the Constitutions of North

and South Dakota, and the Supreme Court of each of those states has uniformly held that when a warrant was issued for the payment of money by the proper officer by virtue of an appropriation where the money was already within the treasury of the state, or where a tax levy had already been made, and provision made for the collection of same, and such warrant was issued on such fund in the treasury as would be supplied by such tax, the issuance of such warrant did not create an indebtedness within the terms of the Constitution limiting indebtedness.

This warrant having been issued by the State Auditor by virtue of the appropriation bill of December 21, 1907, *supra,* and it appearing that the funds are in the State Treasury to meet same, it was not an "evidence of indebtedness" within the meaning of section 29, art. 10, Const.

Section 58, art. 5, of the Constitution (Bunn's Ed. §. 131), provides:

"No act shall take effect until ninety days after the adjournment of the session at which it was passed, except enactments for carrying into effect provisions relating to the initiative and referendum, or a general appropriation bill, unless, in case of emergency, to be expressed in the act, the Legislature, by a vote of two-thirds of all members elected to each house, so directs. * * * "

This affords a pertinent reason why only appropriations for salaries of officers already created by law, and which was already fixed, should be included in the general appropriation bill. The offices created by the Constitution were necessarily ratified by a vote of the people. If the offices are created by and their compensation fixed by the Legislature, the same will not become effective until 90 days after the adjournment of the Legislature, unless an emergency is declared by a two-thirds vote of all the members elected to each house. So you can see that it is contemplated that no appropriation, without the declaring of an emergency, shall be included in the general appropriation bill, except when the creating of the office and the fixing of the salary has

either been adopted by a vote of the people or when they have had an opportunity to invoke the referendum upon it.

The foregoing is one of the most powerful reasons that leads us to reach this conclusion. We are not unmindful, however, of the cause that probably induced the late constitutional convention which assembled in Alabama in 1901 to insert this provision in their Constitution. The initiative and referendum is not incorporated in that Constitution. Unquestionably, the moving cause in that body was the consideration of the necessary number of employes required in the various subdivisions of the executive, legislative, and judicial departments, and the combined energy and pressure that could be brought to bear for the passage of the general appropriation without any constitutional restrictions, by them and their friends might become a menace to the interest of the taxpayer of the state, thereby rendering necessary the placing of this safeguard around the Legislature in making such appropriations. We have been unable to find a provision substantially the same as this one in any other Constitutions, except in that of Alabama. However, Colorado (article 5, § 27) and Wyoming (article 3, § 2) have provisions limiting expenditures in the legislative department by placing a limitation to the effect that no payment shall be made from the State Treasury or in any way authorized to be paid by any person except an acting officer or employe elected or appointed in accordance with law; and we have a similar provision in ours. Section 49, art. 5, Const. (Bunn's Ed. § 133.)

The term "evidence of indebtedness" certainly means a bond or such indebtedness as is usually evidenced by a bond, but which may be evidenced by a certificate of indebtedness not under seal, or instruments executed without the formalities of a bond, under the common law. It is a rule of construction that where a specific term is used, in the statute, as well as in the Constitution, that it governs and controls and gives color and meaning to the general term following, when it relates to the same class or species of things as the specific term.

In the case of *People v. Nordheim*, 99 Ill. 533-560, "the word

'or,' in Township Organization Act,' art. 7, §. 7, requiring judges
of an election to make a written statement 'or' certificate of the
number of votes cast, is to be construed in the sense of 'to wit,' or
'that is to say,' and operates to make the words 'written statement'
of the same meaning as the word 'certificate.' " "Or" may be used in
the sense of "to wit," explaining what precedes. The word "or" in
the statutes is often used in the sense of "to wit—that is, in ex-
planation of what precedes—and gives to that which precedes the
same signification which follows it." *People v. Latham*, 203 Ill. 9,
67 N. E. 403; *Commonwealth v. Grey*, 68 Mass. 501, 61 Am. Dec.
476; *Brown v. Commonwealth*, 8 Mass. 59; volume 6, Words and
Phrases, pp. 5014-5015.

The same rule applies to the construction of the Constitution,
the generally accepted rule being "where the language of the
statute, in its ordinary meaning and grammatical construction
leads to a manifest contradiction of the apparent purpose of the
enactment, or to some inconvenience or absurdity, hardship, or in-
justice, presumably not intended, a construction may be put upon
it which modifies the meaning of the words, and even the structure
of the sentence." (Endlich on Interpretation of Statutes, § 295.)
The same author, in section 296, says:

"A doubtful clause will be controlled by the general
intent of the lawmaking power, rather than to the literal meaning
of the language. Where the language of the act itself points to the
associated words as interpreting the more general ones, the appli-
cation of the rule is obvious. Thus, where an act imposes a tax
on all real estate, to wit, on various specified kinds of real
estate, and from such specifications shown to be private prop-
erty, it is clear that the general words are to be controlled
by the specifications, and that the broad phrase embracing
all real estate, nevertheless does not include property of the
United States, within the territory to which the tax applies. But,
even in the absence of such a clear manifestation of intent, asso-
ciated words are understood to be used in their cognate sense. They
take, as it were, their color from each other; that is, the more
general is restricted to a sense analogous to the less general. The
expression, for instance, of 'places of public resort,' assumes a very

different meaning when coupled with 'roads and streets,' from that which it would have if the accompanying expression was 'houses.' In an enactment respecting houses 'for public refreshment, resort and entertainment' the last word was understood, not as a theatrical or musical or other similar performance but as something contributing to the enjoyment of the 'refreshment.' " (Endlich on Interpretation of Statutes, § 400, p. 651.)

We conclude that section 29, art. 10, Const., was intended to cover bonds and all instruments executed as evidence of indebtedness which was usually evidenced by a bond or such instruments executed and entered into by such formalities.

We further conclude that where funds are in the treasury to satisfy a warrant, or where a tax levy has been laid, and an appropriation has been duly made against such fund in the treasury, or such fund as will be raised by such tax levy, it is simply an order upon the treasurer to pay an audited and allowed claim out of a fund that had been set aside and appropriated. *State ex rel. Ash v. Parkinson*, 5 Nev. 17; *Darling v. Taylor*, 7 N. D. 538, 75 N. W. 766; *In re State Warrants*, 6 S. D. 518-522, 62 N. W. 101, 55 Am. St. Rep. 852; *Sackett v. City of New Albany*, 88 Ind. 473-477, 45 Am. Rep. 467; *Valparaiso v. Gardner*, 97 Ind. 6-11, 49 Am. Rep. 416.

The relator is entitled to the issuance of the writ prayed for, but as the respondent especially indicates that it is his disposition to follow the law as it is interpreted, the writ of mandamus, though awarded, will not be issued. The relator being privileged, however, to renew this application in the event that respondent does not honor and pay said warrant.

Writ of mandamus awarded.

All the Justices concur.