## LINGO-LEEPER LUMBER CO. v. CARTER, State Auditor.

No. 23825.  Opinion Filed Nov. 15, 1932.

Rehearing Denied Dec. 6, 1932.

McPherren & Maurer and Kelly Brown, for plaintiff.

J. Berry King, Atty. Gen., and Fred Hanson and F. M. Dudley, Asst. Attys. Gen., for defendant.

McNEILL, J.  This is an original action for a writ of mandamus against Frank C. Carter, Auditor of the state of Oklahoma, requiring him to act upon a certain claim filed with him and issue a warrant therefor, said claim having been approved by the State Board of Public Affairs for material and supplies furnished for the erection of a substation pursuant to House Bill No. 240, of Session Laws 1931.  Counsel for plaintiff, in their affidavit filed herein in support of their application for said writ, state as follows:

"That said action will not only determine the right of the State Board of Public Affairs to construct or cause to be constructed the penal institution referred to in the pleadings filed herein, but also will determine the legality of the claim forming the basis of this action and referred to in the pleadings, and the legality of a multitude of other similar claims.

"It will be necessary to determine the question as to whether or not the penal institution referred to in the contract, a copy of which is attached to and made a part of the plaintiff's petition filed herein, is in fact a substation or camp within the legislative intent and meaning of House Bill 240 of the Thirteenth Legislature."

This case is presented to this court on petition, answer, and motion for judgment on the pleadings.

Plaintiff alleges that on or about the 21st day of March, 1932, it entered into a contract with the State Board of Affairs of the state of Oklahoma whereby the plaintiff agreed to furnish certain lumber and materials to be used by said board in the building, erection, and construction of a substation of the state penitentiary, said substation being located at Stringtown, in the county of Atoka of said state; that bids were duly advertised and the Board of Affairs accepted the bid of plaintiff as the lowest and best bid for the materials advertised for and requested to be furnished; thereupon said contract was entered into and plaintiff furnished and delivered the materials in compliance with said contract for said substation at Stringtown.  Said plaintiff thereafter submitted his claim to said State Auditor, which was approved by the State Board of Affairs, and alleged that the items shown on its claim are a part and

parcel of the materials required to be used by said Board of Affairs of said state in complying with the laws of the state of Oklahoma, and particularly in complying with House Bill No. 240, Session Laws of Oklahoma, 1931; that said auditor disallowed plaintiff's claim, contending that the same was not a proper charge against the appropriation set forth in House Bill No. 240, and for the sole reason that the said Board of Affairs had no legal authority to enter into the said purchase contract with the plaintiff for the material to be used in the construction of the said substation. Plaintiff further alleged that disallowance and disapproval of said claim by defendant was wrongful and was not justified by law, and by reason thereof plaintiff is unable to recover payment of said sum due under said contract of purchase.

The defendant admitted the purchase of the material set forth in said claim and sets forth in his answer that he has refused to approve the same and to issue a warrant in payment of said claim for the reason that the same is not a proper charge against the items of appropriation under said House Bill No. 240, of Session Laws 1931, or against any other items of appropriation made by the Legislature of this state. Defendant alleges in his answer that his action in disapproving plaintiff's claim was fully justified, "since said claim covers material and lumber purchased by the State Board of Public Affairs for the specific and avowed purpose of being used, as plaintiff then and there well knew, in the construction of the unauthorized penal institution, the nature, cost, and magnitude of which is revealed by plaintiff's 'Exhibit B,' and which institution is not a substation or camp within the meaning and intent of the appropriations above mentioned and against which said claim is drawn."

Defendant also alleges that:

"* * * his action in disapproving said claim is fully justified, inasmuch as the balance of $165,000 remaining in said appropriations can only lawfully be expended in establishing the several substations and/or camps mentioned in said House Bill and cannot lawfully be expended in partially paying for the construction of one penal institution which, together with said architects' fee, will aggregate, exclusive of the costs of said prison labor and prison material, the sum of $322,500, which latter sum is approximately double the amount now remaining in said appropriation."

A determination of the questions presented herein involves the construction of said House Bill No. 240. House Bill No. 240 provided for institutional appropriations. Section 1 provides:

"There is hereby appropriated out of the general revenue fund of the state for the payment of salaries, maintenance and other expenditures of the educational, charitable, eleemosynary and penal institutions of the state herein named for the fiscal years ending June 30, 1932, and June 30, 1933, the sums following the names of such institutions named herein; and from the revolving funds of certain institutions herein designated; and the new college funds are hereby appropriated to institutions entitled thereto, in accordance with section 7225, Revised Laws of Oklahoma, 1910, and section thirteen funds are hereby appropriated to the institutions entitled thereto in accordance with section 7660, Revised Laws of Oklahoma, 1910, as amended by chapter 295, Session Laws, 1917, and appropriating the public building fund to certain state institutions herein specified. Provided, that funds appropriated under this act may be transferred from one item to another upon recommendation of the board having control of such institutions, and with the approval of the Governor, but in no event exceed the total appropriation."

Thereafter follow appropriations for the various institutions: University of Oklahoma, Medical School, Geological Survey, Oklahoma Agricultural and Mechanical College, Stillwater; Oklahoma College for Women, Chickasha, State Penitentiary, McAlester:

| | | |
|---|---|---|
| To be used in case of an increase in the number of prisoners | $102,200.00 | $ 94,400.00 |
| There is hereby appropriated out of the twine plant revolving fund | 115,000.00 | |
| There is hereby appropriated out of the general revolving fund | | 115,000.00 |
| These sums may be used for the construction of additional cell houses or additions to cell houses or for the establishing of substations and camps wherever prisoners may be most profitably used. | | |
| Total | $874,530.00 | $782,730.00 |
| Grand Total__$19,342,538.58, | 1st year | $10.428.329.39 |
| | 2nd year | 8,914,209.19 |

Approved April 22, 1931."

Under the pleadings the Board of Affairs is contemplating the construction of a penal institution, contending that it is authorized to do so under the appropriation in said House Bill for establishing substations and camps. The appropriation as provided by House Bill No. 240, under the appropriation of the State Penitentiary at McAlester, specifically provides "for the construction of additional cell houses, or for the

establishment of substations and camps wherever prisoners may be most profitably used." The language so used by the Legislature cannot be extended so as to include the expenditure of public funds as contended for by the plaintiff. Such language does not within the remotest degree of reasonable certainty express or convey the meaning that the Legislature was providing for the establishment of another penal institution as contemplated by the Board of Affairs. It is too indefinite, vague, and uncertain as to its terms to give it the effect of such meaning, and it is incapable of a construction which would permit it to fall within the meaning of "substation and camps wherever prisoners may be most profitably used." The language for the appropriation relative to "substations and camps wherever prisoners may be most profitably used" is incomplete, indefinite, uncertain, and incapable of enforcement, in the manner contended for by the Board of Public Affairs.

59 C. J. 605, announces the following:

"The intent of the Legislature must appear from the language of the act itself, either expressly or by necessary implication or reasonable intendment, and the court cannot give a meaning to an act not somewhere disclosed or ascertainable by its terms."

59 C. J. 945:

"The court must confine itself to the construction of the law as it is and not attempt * * * construe statutes and not attempt * * * to supply defective legislation or otherwise amend or change the laws under the guise of construction."

It is the duty of the courts to endeavor to give effect to legislative enactments relative to appropriations, but the courts may not judicially legislate, and when a legislative enactment is so vague, incomplete, and uncertain as to its meaning in reference to appropriations to be expended from the public treasury, it is the duty of the court to declare such enactment void. Under the appropriation, supra, there is no properly expressed legislative intent ascertainable by its terms; no place is designated for the construction of another penal institution, as a substation and camp; no directions are given as to how much shall be expended for lands; how much for buildings, their nature and character; no detailed directions are specified. The provisions for the establishment of substations and camps wherever prisoners may be most profitably used, in our opinion, has reference to the establishment of substations and camps of a movable nature, not permanent and lasting, so as to permit the employment of prisoners wherever they may be most profitably used by the state. It is manifest that the meaning of House Bill No. 240 does not warrant the expenditure of public funds of such magnitude for the creation of a permanent institution as contemplated by the Board of Affairs. The claim of plaintiff should be denied.

59 C. J. 172, announces the following:

"Public officers have and can exercise only such powers as are conferred on them by law, and the state is not bound by contracts made in its behalf by its officers or agents without previous authority conferred by statute or Constitution."

Section 55, article 5, of the Constitution of Oklahoma provides as follows:

"No money shall ever be paid out by the treasurer of this state nor any of its funds nor any of the funds under its management except in pursuance of an appropriation by law. * * *"

25 R. C. L. page 392:

"Unless there is an appropriation, courts have no power to enforce a contract of the state."

In other words, the liability in this case depends entirely upon whether or not there was a good and valid appropriation under said House Bill 240 for the construction of said proposed building.

We hold that there was no lawful appropriation for the construction of the building as contended for by plaintiff.

RILEY, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. CLARK, V. C. J., and CULLISON, J., absent. LESTER, C. J., not participating.

---

On Petition for Rehearing.

RILEY, J. After stating that part of H. B. 240, S. L. 1931, as quoted in the opinion, it is contended on rehearing that "the named sums from the indicated sources are appropriated for specific purposes."

Section 55, art. 5, Constitution of Oklahoma inhibits the payment of public funds from the state treasury except pursuant to an appropriation which "shall distinctly specify the sum appropriated and the object (singular) to which it is to be applied."

In Rice v. State, 108 Okla. 4, 232 P. 807, this court held the constitutional mandate contemplated that the amount shall be specified, and the object (singular) of its application must also be specifically stated;

that is, the amount certain shall be stated as well as the purpose (singular) for which it is to be used and from what fund.

The amount in this act stated is not certain, but contingent upon the happening of a certain event, to wit, "in case of an increase in the number of prisoners," but we pass that objectionable feature to consider the sum ·sought to be appropriated. Is it the sum total of the items for the bienniums, to wit: $874,530 for 1932, and $782.750 for the year 1933, or is it limited to the items $102,200 and $115,000 for the year 1932, and $94,400 and $115,000 for 1933?

It is questionable, therefore, whether the sum appropriated is distinctly specified. But we pass this query to consider the object or objects to which the public money here involved is sought to be applied. It is decisive of this controversy.

The announced purposes are:

(1) Construction of additional cell-houses or additions to cell-houses, or

(2) For the establishment of substations and camps wherever prisoners may be most profitably used.

The first purpose and the second purpose are distinctive in nature, geographical location, and language. Would or should a purported appropriation be sustained which had for its dual purpose the maintenance of a given and located institution or the disjunctive objective of building another elsewhere, or spreading the located institution "wherever." (whether movable or immovable) throughout the length and breadth of this commonwealth it may be thought by some (other than the Legislature) that the variable sums may be utilized for variable purposes? No.

So it is seen to us that the object to which the public money here involved is sought to be applied is plural, variable, and therefore not distinct. By the mandate of the Constitution the use of the money for the purposes here involved is prohibited, at least, the right by the writ sought is not clear.

Section 56, art. 5, Constitution of Oklahoma, inhibits the inclusion within the general appropriation bill of legislation, and restricts the same to items for the departments and institutions already created and existing. Bryan v. Menefee, 21 Okla. 1, 95 P. 471; Menefee v. Askew, 25 Okla. 623, 107 P. 159.

The petition for rehearing is denied.

·LESTER, C. J., and HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., absent.

Note.—See under (1) 25 R. C. L. 810; R. C. L. Perm. Supp. p. 5613; R. C. L. Pocket Part, title "Statutes," § 62. (2) 25 R. C. L. 960, 961; R. C. L. Perm. Supp. p. 5629; R. C. L. Pocket Part, title "Statutes," §§ 216, 217 (3) 26 R. C. L. 1488, 1439; R. C. L. Perm. Supp. p. 5885.