**STATE ex rel. HUDSON et al. v. CARTER, State Auditor.**

No. 24901. Oct. 31, 1933.

Rehearing Denied Dec. 12, 1933.

E. S. Ratliff, for plaintiffs.

J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for defendant.

Ledbetter, Stuart, Bell & Ledbetter, for Hon. Wm. H. Murray, Governor of State of Oklahoma.

ANDREWS, J. This is an original action which was brought in this court by certain employees of the Corporation Commission of Oklahoma, who seek thereby to obtain a writ of mandamus against F. C. Carter, State Auditor of the state of Oklahoma, requiring him to audit and allow their several claims for salaries for the month of July, 1933, and to draw and issue to each of them a warrant for the amount thereof. An alternative writ of mandamus in conformity with the prayer of the petition was issued and the same was returned with an answer thereto by the respondent in which is set forth the reasons assigned for refusing to allow the claims of the petitioners.

The petitioners contend that they are, and during the month of July, 1933, were, employees of the Corporation Commission; that they performed services as such during the month of July, 1933, for which they have not been paid; that they are entitled to the annual salaries provided in a certain journal entry which will be referred to hereinafter; that they are entitled to have those salaries paid from the appropriation made by an item of $50,000, for "Public Utilities—Appraisal, Audit, and Litigation," in the general appropriation bill enacted at the regular session of the Fourteenth Legislature of Oklahoma (Senate Bill No. 27), approved May 6, 1933; that the respondent has refused to approve their claims for salary and to draw warrants in payment thereof, and that they are entitled to a writ of mandamus as prayed for.

Section 55, article 5, of the Constitution of Oklahoma provides that:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

Unless the item quoted from the general appropriation bill constitutes a valid appropriation for the purpose or purposes therein stated, there has been no appropriation by law therefor, for it is admitted that no other appropriation therefor has been made.

The petitioners contend that the item in the general appropriation bill is a valid appropriation. The respondent denies that contention. That question must be determined by the application of the provisions of section 56, article 5, of the Constitution of Oklahoma. That section provides:

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

One of the provisions of that section is, "* * * nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary shall have been already provided for by law. * * *" That provision is plain and unambiguous. With reference thereto this court, in Bryan v. Menefee, State Treas., 21 Okla. 1, 95 P. 471, held:

"Before provision can be made in the general appropriation bill for the compensation of any officer or employee in the executive, legislative, or judicial departments of the state, the office must first have been created and the salary or compensation fixed, or the employment authorized, and the compensation provided for either therein or in a separate bill.

"An appropriation to cover compensation of employees in the executive, legislative, or judicial departments of the state, where such employment had not been authorized by statute and their compensation fixed prior to the passage of such general appropriation bill,

can only be enacted as a separate appropriation bill, embracing but one subject"

—and said:

"It was evidently the intention of the constitutional convention that the general appropriation bill, excepting interest on the public debt, should embrace nothing but items for the executive, legislative and judicial departments, covering the officers and employees thereof, where the office or employment had already been provided for, and the salary or compensation fixed by law prior to the passage of such general appropriation bill. An appropriation to cover compensation of employees in the executive, legislative, or judicial departments, not prior to that time authorized by law and their compensation also fixed, can only be enacted as a separate appropriation bill embracing but one subject."

The petitioners admit that a fair interpretation of the provision requires that "regular employees and officers necessary to the conduct of the ordinary business of the state or any department thereof must be provided for in advance of the appropriation," but they contend that it was not the purpose of the Constitution to prevent the appropriation of money in an aggregate amount necessary for the employment of such experts and special help as the Corporation Commission or other departments of the state find necessary to employ. In other words, they contend that the inhibition in the constitutional provision applies only to the salary of regular officers and employees. We do not so construe the provision. The provision is that the salary of **no** officer or employee of the state or any subdivision thereof shall be increased in such bill and that no appropriation shall be made therein for any such officer or employee, unless his employment and the amount of his salary shall have been already provided for by law. The word "no," as used therein, is all inclusive. We can give it no construction other than that it was intended to and does apply generally and that it includes special as well as regular employees.

We do not hold that appropriations may not be made for salaries of officers and employees whose employment has not been authorized and whose salaries have not been fixed by law. Under a provision of section 56, article 5, supra, such appropriations are authorized. That provision is as follows: "All other appropriations shall be made by separate bills, each embracing but one subject." Such is that portion of the decision of this court in Bryan v. Menefee, supra, which is as follows:

"An appropriation made by a separate bill containing but one subject, providing for the contingent expense of a state officer, is valid and a warrant properly drawn against such contingent fund to pay for clerical assistance for such officer is valid."

The petitioners contend that the construction of the constitutional provisions herein followed and applied is contrary to the legislative, executive, and departmental constructions thereof followed since statehood. We do not consider it necessary to determine whether or not that contention is true, for we know of no rule of law which authorizes us to give effect to a legislative, executive, or departmental construction of a constitutional provision which is in direct conflict with the judicial construction thereof theretofore rendered. The constitutional provisions in question were construed by this court in Bryan v. Menefee, State Treas., supra, opinion filed April 27, 1908. If there was a legislative, executive, or departmental construction thereof prior to that time, it was of such short duration as to be entitled to little, if any, consideration by this court. Subsequent legislative, executive, or departmental constructions can be of no effect in view of the judicial construction placed thereon. There is another reason why legislative, executive, and departmental constructions should not be applied, and that is that the constitutional provisions are plain and unambiguous.

The petitioners rely to a considerable extent on the decision of this court in Edwards v. Childers, State Auditor, 102 Okla. 158, 228 P. 472. Therein was under consideration an appropriation made in a separate bill embracing but one subject. An appropriation made in a general appropriation bill was not before the court at that time for consideration. For that reason that decision is not applicable herein.

The petitioners call attention at length to certain legislation that has been enacted with reference to a budget system which is to be used in the preparation of budgets prior to the enactment of the general appropriation bill. They contend that under that legislation it is difficult, if not impossible, to procure appropriations in separate bills, each embracing but one subject. We do not think that such legislation in anywise operates to affect the constitutional provisions which were intended to be, and which are in fact, limitations on legislative power. We do not understand that the Legislature has considered such legislation as binding upon itself, for at the last regular session of the

Legislature a number of appropriations were made in separate bills, each embracing but one subject.

We, therefore, conclude that no money shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; that the State Auditor is not authorized to issue a warrant and the State Treasurer is not authorized to pay any warrant against the state, or any of its funds, or any of the funds under its management, until an appropriation by law has been made for the purpose for which the claim was made or warrant issued; that the general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt; that no appropriation shall be made in the general appropriation bill for any officer or employee, regular or special, of the executive, legislative, or judicial departments of the state, unless provision shall have been made for such employment and the amount of salary therefor fixed by law prior to the enactment of the general appropriation bill, and that an item in a general appropriation bill of $50,000 for "Public Utilities—Appraisal, Audit, and Litigation" is not available for the payment of salaries of accountants, engineers, clerks, and stenographers, regular or special, of the Corporation Commission, when the employment and the amount of the salary had not been provided for by law prior to the enactment of the general appropriation bill.

Before this court will issue a writ of mandamus to the State Auditor requiring him to issue a warrant in payment of a claim for the salary of an employee, regular or special, of the legislative, executive, or judicial departments of the state, its attention must be called to, or it must have knowledge of, an appropriation by law for that purpose, and if that appropriation is contained in a general appropriation bill, its attention must be called to, or it must have knowledge of, some law which provided for the employment and fixed the salary of the employee and which was in effect at the time of the enactment of the general appropriation bill.

It is admitted that the plaintiffs in this case were employed on the 1st day of July, 1933, by an action of the Corporation Commission taken on that date, which is reflected in a journal entry of the Corporation Commission which we quote as follows:

"Before the Corporation Commission of the State of Oklahoma

"In the Matter of the Employment of Assistants Under Public Utilities—Appraisal, Audit and Litigation.

"Journal Entry No. _____.

"Be It Remembered, That on the 1st day of July, 1933, the Commission had up for consideration the matter of employments under 'Public Utilities—Appraisal, Audit and Litigation', under Senate Bill 27 of the 1933 Legislature (14th regular session) and makes the following appointments, and specifies the salaries thereunder: (Salaries as stated per year, but payable monthly)

### Accountants

| | |
|---|---|
| M. C. Fox | $3600.00 per annum |
| V. K. Sparks | 2280.00 per annum |
| Clark Hudson | 2280.00 per annum |
| M. B. Louthan | 2100.00 per annum |
| B. J. Rauch | 2100.00 per annum |
| Carl Butler Mitchell | 1800.00 per annum |

### Engineers

| | |
|---|---|
| William MacKintosh | $3600.00 per annum |
| J. A. Wiseman | 2280.00 per annum |
| George D. Kester | 2280.00 per annum |

### Clerks and Stenographers

| | |
|---|---|
| L. W. Langford | $1500.00 per annum |
| Barrett Fellows | 1500.00 per annum |
| J. H. Noel | 1500.00 per annum |
| Nan Broan, distaphone op. | 1200.00 per annum |
| Willie Sweat | 1200.00 per annum |
| Willie Mae Joiner | 1200.00 per annum |
| Carleton King | 900.00 per annum |

"Done at the office of the Commission, State Capitol, Oklahoma City, Oklahoma, the day and year first above written."

(For brevity the signatures thereto have been omitted.)

However, the fact that they were not employed until after the general appropriation bill was enacted in no wise operates to infringe upon the constitutional provision. The constitutional provision, supra, does not relate to individuals who hold offices or who are employed. It relates to offices and employments. An appropriation may be made for an employment when no one is employed therein at that time.

Herein is involved the question of whether or not the employments in which the plaintiffs are employed and the salaries therefor had been provided for by law prior to the enactment of the general appropriation bill. The plaintiffs contend that such employments had been provided for prior to that time. They plead nine journal entries reflecting

prior actions of the Corporation Commission and they rely on those actions of the Corporation Commission and the provisions of section 3496, O. S. 1931, in support of that contention.

By the provisions of section 111, C. O. S. 1921, clerical, stenographic, and other positions were created and annual salaries payable monthly were fixed for those employments. Paragraph Z-1 thereof related to clerical, stenographic, and other positions of the Corporation Commission. That paragraph was amended by the provisions of section 1 of Senate Bill No. 49 of the Special Session of the Legislature, 1923-1924 (section 3496, O. S. 1931). Senate Bill No. 49, supra, was:

"An Act, amending paragraph 'Z-1,' of section 111, Compiled Statutes of Oklahoma, 1921, relating to the Corporation Commission; making appropriation for said department; repealing certain and conflicting statutes, and declaring an emergency."

Without regard to whether or not section 2 of that bill was in violation of the provisions of section 57, article 5, of the Constitution, section 1 thereof was a valid legislative enactment under the provisions of that section of the Constitution.

An examination of the provisions of that section discloses that it created employment for five accountants in a bureau of accounting and fixed the salary of one of them at $3,000 and the other four at $2,500 each per annum. The plaintiffs Clark Hudson, M. B. Louthan, B. J. Rauch, and Carl Butler Mitchell are employed as accountants. While the general appropriation bill made no appropriation for accountants in an accounting department, nevertheless, since those employments had been provided for and the salaries fixed by law, if the appropriation in question is otherwise valid, it may be used for the purpose of paying salaries of those accountants in the performance of accounting work incident to the audit of public utilities. As to those plaintiffs there can be no question as to their right to recover in this action, if the appropriation is otherwise valid.

Section 29, article 9, of the Constitution provides:

"The Commission shall ascertain, and enter of record, the same to be a public record, as early as practicable, the amount of money expended in construction and equipment per mile of every railroad and other public service corporation in Oklahoma, the amount of money expended to procure the right of way, and the amount of money it would require to reconstruct the roadbed, track, depots, and transportation facilities, and to replace all the physical properties belonging to the railroad or other public service corporation. It shall also ascertain the outstanding bonds, debentures, and indebtedness, and the amount, respectively, thereof, when issued, and rate of interest, when due, for what purposes issued, how used, to whom issued, to whom sold, and the price in cash, property, or labor, if any, received therefor, what became of the proceeds, by whom the indebtedness is held, the amount purporting to be due thereon, the floating indebtedness of the company, to whom due, and his address, the credits due on it, the property on hand belonging to the railroad company or other public service corporation, and the judicial or other sales of said road, its property or franchises, and the amounts purporting to have been paid, and in what manner paid therefor. The Commission shall also ascertain the amounts paid for salaries to the officers of the railroad, or other public service corporation, and the wages paid its employees. For the purpose in this section named, the Commission may employ experts to assist them when needed, and from time to time, as the information required by this section is obtained, it shall communicate the same to the Attorney General by report, and file a duplicate thereof with the State Examiner and Inspector for public use, and said information shall be printed, from time to time, in the annual report of the Commission."

The term "public service corporation," as used therein, is defined in section 34, article 9, of the Constitution to include

"* * * all transportation and transmission companies, all gas, electric light, heat, and power companies, and all persons authorized to exercise the right of eminent domain, or to use or occupy any right of way, street, alley, or public highway, whether along, over or under the same, in a manner not permitted to the general public. * * *"

By the provisions of sections 29 and 34, article 9, supra, the Corporation Commission is required to ascertain certain facts pertaining to the amount of the investment, the cost of replacement, the amount of indebtedness, the amount of credit, the salaries of officers and employees, and other facts with reference to railroads, transportation and transmission companies, gas, electric light, heat and power companies, and all persons authorized to exercise the right of eminent domain or to use or to occupy any right of way, street, alley, or public highway, along, over, or under the same, in a manner not permitted to the general public, and for that purpose it is authorized to employ experts to assist the members of the Corporation Commission, when needed. In section 29

article 9, supra, the word "purpose" is used. Although it might be said that many duties were imposed by the section, the framers of the Constitution evidently considered the performance of those duties to be a single purpose. That purpose was the ascertaining of the information which the framers of the Constitution thought should be ascertained by the Corporation Commission in order that it might be able to exercise other powers vested in it by the Constitution. We call attention to the fact that nowhere else in the Constitution is there any provision authorizing the Corporation Commission to employ anyone to assist it in the performance of any duty. The inclusion therein of this unlimited authority evidences an intention on the part of the framers of the Constitution to grant to the Corporation Commission in this instance special power and authority. The duty imposed upon the Corporation Commission by section 29, article 9, supra, is in no wise dependent upon any action or nonaction of the Governor. Its power to employ experts, when needed, is in no wise subject to the approval or control of the Governor, unless it be the power of the Governor to veto a legislative appropriation that had been made therefor. The clear import of the Constitution is to the effect that the Corporation Commission may proceed with the performance of the duty imposed upon it by the provisions of section 29, article 9, supra, even though the Governor may not approve of the performance of that duty, or the manner in which it is being performed. The fact that a Governor might not approve of the performance of that duty by the Corporation Commission, or the manner in which that duty was being performed, may have been foreseen by the framers of the Constitution. That may have been the reason for the inclusion therein of the single provision which authorizes the Corporation Commission to employ experts to assist them when needed. The duty imposed could not be performed without the use of experts. The Constitution authorizes the Corporation Commission to employ experts to assist the members thereof in the performance of the duty imposed upon them by the provisions of section 29, article 9, supra. The mandate contained in the Constitution is controlling.

We are of the opinion, and hold, that the term "experts", as used in section 29, article 9, supra, includes accountants, engineers, clerks, and stenographers necessary for the performance of the duties imposed by the provisions of that section. While the constitutional provision does not, in terms, authorize the Corporation Commission to fix the amount of the salaries to be paid for such employment, from the very nature of the case we hold that the Corporation Commission was vested with that power. To hold otherwise would be to hold that the framers of the Constitution intended to limit the power of the Corporation Commission to employ experts. The constitutional provision is susceptible of no such construction. Its purpose was to require and provide for the ascertaining of the facts required to be ascertained, without regard to whether or not the performance of that duty met with the approval of the Governor or the Legislature. The journal entries pleaded by the plaintiffs show that the Corporation Commission had employed the plaintiffs as accountants, engineers, clerks, and stenographers to assist them and had fixed the salaries of their employments prior to the time of the enactment of the general appropriation bill. The appropriation in question is not invalid by reason of any provisions of section 56, article 5, of the Constitution.

We pass without deciding the question of whether or not an appropriation by the Legislature is necessary for the compensation of such experts. The record shows that an appropriation available for that purpose was made by the Legislature. That appropriation is in almost the same language as prior appropriations for such a purpose. Under the constitutional definition hereinbefore referred to, that purpose is singular, although it requires the use of appraisers and auditors and although it may be necessary that there be litigation in the ascertaining of the facts required to be ascertained. The sum appropriated and the object for which the appropriation was made were distinctly specified. For those reasons the decisions of this court with reference to appropriations, the purpose of which is vague, incomplete, and uncertain, have no application. The decision of this court in Lingo-Leeper Lbr. Co. v. Carter, State Auditor, 161 Okla. 5, 17 P. (2d) 365, involved a state of facts entirely different from those involved in this action. The appropriation involved therein, by its terms, was conditional. It was "The following amounts are hereby appropriated out of the revolving fund of the state penitentiary: * * * to be used in case of an increase in the number of prisoners. * * *" Herein the appropriation was not conditional. It was: "There is hereby appropriated out of any monies in the Treasury of the State of Oklahoma, not

otherwise appropriated, for the fiscal years ending June 30, 1934, and June 30, 1935, the following sums, or so much thereof as may be necessary for the purposes herein named and no other. * * * Public Utilities—Appraisal, Audit, and Litigation (to be expended by and with the approval of the Governor). * * *" Therein the appropriation was conditional upon an increase in the number of prisoners. Herein the appropriation is not conditional upon the happening of any event.

A question is presented as to whether or not the Legislature could lawfully provide that the amount so appropriated was to be expended "by and with the approval of the Governor." In determining the answer to that question, we must keep in mind the powers of public officials. Our attention has been called to no law, and we know of none, which authorizes the Governor to supervise the expenditure of funds appropriated for the performance by the Corporation Commission of the duty required under the provisions of section 29, article 9, supra, to be performed. The provisions of that section are to the contrary. If the Governor has such authority, it must be by virtue of the provision of the general appropriation bill in question. By the provisions of section 56, article 5, of the Constitution, the general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. If we were to concede that legislation could be enacted in the general appropriation bill, the attempt to grant the Governor authority that he did not theretofore have would fail because of the failure to include the same in the title to the general appropriation bill. The title thereto reveals no such legislative intention. However, we cannot make such a concession, for the language of the constitutional prohibition is positive and unambiguous. We so held in Bryan v. Menefee, State Treas., supra, Menefee, State Treas., v. Askew, 25 Okla. 623, 107 P. 159, and in every subsequent decision of this court pertaining thereto. The same rule has been followed in every state having a similar constitutional provision. In Ritchie v. The People (Ill.) 40 N. E. 454, the language used was:

"In a bill making appropriations for those objects, every provision is unconstitutional which proposes to do anything besides making such appropriations."

We are not unmindful of those decisions which hold that provisions may be included in a general appropriation bill which impose restrictions upon the expenditures of funds appropriated thereby. But our attention has been called to no decision, and we know of none, which holds that, under a constitutional provision such as ours, a provision may be included in a general appropriation bill which confers authority upon a public officer that that officer did not theretofore have. Certainly, if the general appropriation bill had provided that the amount appropriated might be expended only upon the approval of some other executive officer of the state, we would be required to look to the statutes to ascertain whether or not that officer had theretofore been authorized to approve such expenditures, and if we found no such authority, we would be compelled to hold that that officer was not authorized to approve such appropriations merely because an attempt had been made in the general appropriation bill to vest him with such authority. A provision requiring the approval of the Governor of the expenditure of such an appropriation is void for three reasons: First, there is no authority of law for the Governor to approve an expenditure of money appropriated for the purpose of enabling the Corporation Commission to perform the constitutional duty required to be performed by it under the provisions of section 29, article 9, supra; second, the attempt to authorize the Governor to exercise such power is void under the provisions of section 56, article 5, supra; and third, because the Legislature is without authority to confer the power upon the Governor to do indirectly a thing which the Governor could not be directly empowered to do, that is, to reduce an item in an appropriation bill. We held to that effect in Peebly v. Childers, State Auditor, 95 Okla. 40, 217 P. 1049. See, also, Regents of the State University v. Trapp, Auditor, 28 Okla. 83, 113 P. 910, and Carter, State Auditor, v. Rathburn, 85 Okla. 251, 209 P. 944. We quote at length from a decision of the Supreme Court of Montana in Mills v. Porter, State Auditor, 222 P. 428, in which that court said:

"The Supreme Courts of a number of states which have constitutional provisions similar or somewhat similar to our own, have had occasion to pass upon this subject, directly or indirectly. Not one, save Pennsylvania, has affirmed the right of the Governor to scale an item in an appropriation bill. In Stong v. People, supra [74 Colo. 283, 220 P. 999], the power of the Governor to do so is denied distinctly. Colorado's Constitution on the precise point is identical with ours. To the same effect are: Fergus v. Russel, supra [270 Ill. 304, 110 N. E. 130]; Lukens

v. Nye, supra, [156 Cal. 498, 36 L. R. A. (N. S.) 244, 105 P. 593, 20 Ann Case. 159] ; Fairfield v. Foster, supra [25 Ariz. 146, 214 P. 319] ; Nowell v. Harrington, 122 Md. 487, 89 Atl. 1098; Fulmore v. Lane, 104 Tex. 499, 140 S. W. 1082. In Illinois the provision is that appropriation bills shall specify 'their several amounts in distinct items and sections. And if the Governor shall not approve any one or more of the items or sections, in any bill, but shall approve the residue thereof, it shall become a law, as to the residue, in like manner as if he had signed it. The Governor shall then return the bill, with his objections to the items or sections of the same not approved by him, to the house in which the bill shall have originated,' etc. [Art. 5, sec. 16.]

"When Lukens v. Nye, supra, was decided, the Constitution of California provided that 'if any bill presented to the Governor contains several items of appropriation of money, he may object to one or more items, while approving other portions of the bill.' [Art. 4, sec. 16.]

"The Supreme Court of that state, in a recent case, Wood v. Riley (Cal.) 219 P. 966, said: 'Under the old system, the Governor might eliminate, but might not reduce, an appropriation. He could only "object to one or more items." Const. art. 4, sec. 16. He may now reduce or eliminate any one or more items of appropriation of money, while approving other portions of the bill. Const. art. 4, sec. 34, as amended November 7, 1922.'

"The applicable provision of the Constitution of Oklahoma is sec. 12 of article 6, which reads, in part, as follows: 'Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill.'

"The similarity between the foregoing provision and our own is readily apparent. In Peebly v. Childers, 95 Okla. 40, 217 P. 1049, the Supreme Court of Oklahoma said: 'The fair interpretation of our constitutional provision requires us to hold that the action of the Governor in attempting to approve in part and disapprove in part distinct items of the institutional appropriation bill was an unauthorized and futile gesture and wholly ineffectual for any purpose.'

"Under a constitutional provision similar to our own. the Supreme Court of Pennsylvania upheld the action of the Governor in reducing an appropriation. Com. ex rel. Elkin v. Barnett, 199 Pa. 161, 55 L. R. A. 882,

48 Atl. 976. As against a vigorous dissent the majority held that the words 'item' and 'part' were used interchangeably in the following sentences: 'The Governor shall have power to disapprove of any item or items of any bill, making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be the law, and the items of appropriation disapproved shall be void,' etc. [Art. 44, sec. 16.]

"What we have said above as to the construction of this provision need not be repeated. Since the decision in Com. ex rel. Elkins v. Barnett was promulgated, it has been commented on by many courts. The conclusion reached by the majority in that case has not been followed by any court. Some have refused to follow it (Stong v. People ; Fulmore v. Lane, supra ; Fairfield v. Foster, 25 Ariz. 146, 214 P. 319), while others have distinguished it, or attempted to do so, reaching a contrary conclusion (Fergus v. Russell and Peebly v. Childers, supra.)"

Had the Governor attempted to reduce the amount of the appropriation made for the use of the Corporation Commission, his actions would have been ineffective under the provisions of our Constitution. The Legislature is without authority of law to confer upon the Governor the power to reduce the amount of an item of an appropriation. It cannot authorize him to do indirectly what he is prohibited by the Constitution from doing directly.

We have given careful consideration to the "Brief on Behalf of Wm. H. Murray, Governor of the State of Oklahoma," and we have found nothing therein which in any wise can be considered as a reason for holding that a provision of the Constitution does not mean what the language clearly states. The theory expressed therein that the appropriation in question was conditional and "based upon the estimated income from taxation" is contrary to the law and to the facts. Under the provisions of section 2, article 10, of the Constitution, the Legislature is required to provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state. When the Legislature made the appropriation it determined that the amount thereof was an expense. Having made that appropriation, it was the duty of the Legislature to provide for the revenue to defray that expense. An attempt to grant the Governor power to say whether or not the amount appropriated should be expended in no wise operated to reduce the amount of estimated expense, the rate of taxation, or the amount

of taxes to be collected. The contention is based on an erroneous theory that the amount of expenditure is dependent upon the amount of taxes collected. The contrary is true. The amount of taxes levied, under our Constitution, is dependent upon the amount of the appropriations. The cases cited in this brief relate to many kinds of legislative enactments, but we observe that there is no case cited therein which holds that the Governor may be granted authority in a general appropriation bill to supervise disbursements of funds which he was not authorized to supervise prior to the enactment thereof.

The contention of the Attorney General that the provision in question is not legislation is answered by his statement in another portion of his brief that "* * * the Legislature by the limitation in question has merely conferred discretion upon the Governor in the administration of the law." That is a correct statement of the intention of the Legislature to confer discretion upon the Governor that the Governor theretofore did not have.

The Attorney General contends that, though the appropriation is otherwise sufficient, it may not be used for the purpose of payment of fixed annual salaries of employees of the Corporation Commission. We decline to so hold. The constitutional authority of the Corporation Commission to employ experts does not require such employment to be by contract, as contended by the Attorney General. The term "employ" does not have that meaning.

The Attorney General contends that if the limitation in question fails, the appropriation must fail. In support of that contention he cites 59 Corpus Juris 644, and decisions of this court holding that if the obnoxious portion of a statute is of such import that the other portions without it will cause results not contemplated or desired by the Legislature, then the entire section must be held inoperative. Parwell Inv. Co. v. State, 71 Okla. 121, 175 P. 514. We agree with the principle of law contended for by the Attorney General, but we do not agree with his contention that it has any application to the facts shown by the record in this case. We are dealing with a general appropriation bill. None of the decisions cited applies to such a bill. If the rule stated is applicable to the provisions of the general appropriation bill, its application is dependent upon a construction of the legislative intent. In determining that question, the rule is stated in 59 Corpus Juris, section 206, pages 642, 646, to be:

"* * * If, when the invalid part is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained to that extent; and this rule is especially applicable where the statute provides for two distinct subjects. In this connection it has frequently been declared that the valid part of a statute will be sustained where the valid and invalid parts are so separate and distinct that it is clear or may be presumed that the Legislature would have enacted the former without the latter, if it had known of the invalidity, or, as otherwise stated, if the valid or invalid parts are not so intimately connected as to raise the presumption that the Legislature would not have enacted the one without the other, the act will be upheld so far as valid. On the other hand, the whole statute will be declared invalid where the constitutional and unconstitutional provisions are so connected and interdependent in subject-matter, meaning, and purpose as to preclude the presumption that the Legislature would have passed the one without the other, but, on the contrary, justify the conclusion that the Legislature intended them as a whole and would not have enacted a part only. In other words, the whole act will be declared invalid where the unconstitutional part is so connected with the remainder or with the general scheme, that it cannot be stricken out without making the legislative intent ineffective, or is of such import that, without it, the other parts would cause results not contemplated or desired by the Legislature, or is the consideration and inducement of the whole act, although it has also been held that the rule of indivisibility where the invalid part is the inducement or consideration of the whole act does not apply if the invalid provisions, although appearing in the same chapter of the revised laws, were enacted in previous years. In determining the question whether the act would have been passed without the invalid part, the rule has been laid down, that if the mere elision of the words or provisions which give an unconstitutional effect, will leave a consistent and workable act, the remainder will be valid; but if modifications or limitations must be inserted or understood to avoid the fatally broad effect of the statutory language, the whole act must fail. * * *"

As to the item in question, when measured by that rule, we find that the "elision of the words or provisions which give an unconstitutional effect will leave a consistent and workable act," that is, will leave an appropriation singular, definite, and certain. That which will remain "is complete in it-

self and capable of being executed in accordance with the apparent legislative intent." The valid and invalid parts are so separate and distinct that it is clear, or may be presumed, that the Legislature would have enacted the former without the latter, if it had known of the invalidity of the latter. We cannot hold otherwise without holding that the Legislature would not have made an appropriation for the purpose of enabling the Corporation Commission to perform a duty enjoined upon it by the Constitution, if it had known that it could not require the amount appropriated to be expended "by and with the approval of the Governor." We cannot so hold. We must give to the Legislature every presumption of an intention to conform its actions to the provisions of the Constitution. We do so in this case. We, therefore, hold that had the Legislature known of the invalidity of its attempt in a general appropriation bill to vest the Governor with power that he did not theretofore have, it would have made the appropriation for the performance of the constitutional duty of the Corporation Commission notwithstanding. The Legislature made the appropriation. Evidently it was intended to be used. There is nothing in the act to indicate any other intention. The fact that the Legislature attempted to vest approval of its use in the Governor, in no wise operates to show that the Legislature did not intend for the amount to be used. If we should hold that the invalidity of the provision in question invalidated one item of appropriation, we must hold that many of the items of appropriations made are invalid by reason of the invalidity of certain of the provisions of the second paragraph of the appropriation bill, wherein an attempt was made to vest the Governor with certain powers which he did not theretofore have. By the provisions of that paragraph. the heads of state departments were required to file estimates of expenditures quarterly, in advance, with the Governor, and the Governor was authorized to disapprove any estimate; the State Auditor was prohibited from issuing warrants in excess of the approved estimate. and the State Board of Affairs and the Board of Agriculture and other governing boards were prohibited from making contracts in excess of such estimates. Those provisions purport to impose duties on public officers and to grant authority to public officers not theretofore imposed or granted. For the reasons hereinbefore stated, they were void. We cannot conclude that the Leg-

islature intended that if those legislative provisions were void, the appropriations made in a general appropriation bill would fail. We refuse to so hold. To do so would be to hold that the Legislature did not intend to make appropriations for the conduct of the government of this state, unless its attempt to legislate in a general appropriation bill, in violation of the plain and unambiguous provisions of the Constitution, was lawful.

We, therefore, hold that the appropriation in question is a valid appropriation made by the Legislature for the Corporation Commission of an amount for the carrying on of the work required to be done under the provisions of section 29, article 9 of the Constitution; that the plaintiffs are employees of the Corporation Commission, serving in employments, which employments and the salaries therefor had been provided by law prior to the enactment of the general appropriation bill; that they served as such during the month of July, 1933, and that they are entitled to the salaries fixed by law for their services. The Auditor of the state of Oklahoma has shown no valid reason for his refusal to issue warrants in payment of those salaries. For those reasons, the writ is ordered to issue.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, and WELCH, JJ., concur. BAYLESS and BUSBY, JJ., absent.