GOVERNOR — EXECUTIVE ORDERS
The Governor of the State of Oklahoma does not have the authority to create by Executive Order any governmental entity possessing the capacity to discharge executive power. Where a governmental entity of the State has been created by Executive Order and has subsequently expended public funds, such expenditures are valid until such time as it has been determined by a proper authority that the agency or entity in question has not been validly created. The Attorney General has received your request for an opinion wherein you raise two questions. These questions will be dealt with in sequence. Your first question states in effect: Does the Governor of the State of Oklahoma have the authority to create agencies, departments, boards, and other governmental entities by Executive Order ? The first question raised refers to the creation of a governmental agency, thus contemplating the origination of an entity not previously existent. The problem of originating a governmental agency by Executive Order must be viewed from a dual angle: the breadth of the gubernatorial powers which inhere in that office as the executive head of State Government and the procedural requirements for creating a new agency. Any examination of the scope of the powers vested in the Governor of the State of Oklahoma must begin with Article VI, Section 1, of the Oklahoma Constitution, which provides: "The Executive authority of the State shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, Commissioner of Insurance, and other officers provided by law and this Constitution, each of whom shall keep his office and public records, books, and papers at the seat of government, and shall perform such duties as may be designated in this Constitution or prescribed by law." (Emphasis added) Article VI, Section 2 provides for the supreme power to be vested in the Governor as follows: "The Supreme Executive power shall be vested in a Chief Magistrate, who shall be styled `The Governor of the State of Oklahoma.'" Additional duties and authorities of the Governor are provided in Article VI, Section 8 as follows: "The Governor shall cause the laws of the State to be faithfully executed, and shall conduct in person or in such manner as may be prescribed by law, all intercourse and business of the State with other states and with the United States, and he shall be a conservator of the peace throughout the State." Asserting the scope of gubernatorial powers requires that initial attention be directed toward the concluding phrase of Section 1 providing that the Governor shall perform such duties as may be designated in the Constitution or prescribed by law. Is this language merely directory of the inherent powers of the Chief Executive, or is it to be read negatively as a delimitation of the powers of that office — that the Governor is powerless to act in the absence of constitutional or statutory mandate? 81 C.J.S. States, 60, page 982, offers the following answer: "The Governor has no prerogative powers, but possesses only such powers and duties as are vested in him by constitutional or statutory grant. The extent and exercise of the Governor's powers under statute will depend upon the particular provisions thereof. . . . "The Executive power of the Governor is a continuing power, pertaining to the office and not to the man. The Governor is ordinarily charged with the duty of seeing that the laws of the State are faithfully executed, and is entrusted with such powers as may be essential to the performance of that duty It has been held, however, that the Governor's general power to enforce the laws does not by implication confer any specific power which he would not otherwise possess. The power to secure efficient execution of the laws must be in the manner, by the method, and within the limitations prescribed by the Constitution and the Statutes of the State." (Emphasis added) Decisions in other states are instructive on this point. It has been held that general words in a Constitution, such as those empowering the Governor to enforce the laws, do not carry an implication of specific powers not otherwise possessed by the Governor. Henry v. State, 87 Miss. 1, 39 So. 856. The Governor has been said to be at all times amenable to the State Constitution and laws; authority for his official acts must, accordingly, be discoverable therefrom. Constantin v. Smith, 57 F.2d 227. Governors do not exercise arbitrary power, their power stemming from specific constitutional provisions or statute. State ex rel Green v. Collison, Del., 97 A.2d 836. These decisions are in accord with the view obtaining in Oklahoma where it has been held that the powers of the Governor are defined by the Constitution. Haskell v. Huston, 21 Okl. 782,79 P. 92 (1908). Moreover, nothing appears in the Constitution which would remove the Governor from the rule laid down in Shaw v. Grumbine, 137 Okl. 95, 278 P. 311 (1929), that public officers have only such authority as is conferred upon them by law, and such authority must be exercised in the manner prescribed by law. In view of this holding, it is significant that neither the Constitution nor the Statutes of Oklahoma expressly confer authority to issue Executive Orders carrying the force of law. This is not to infer from such silence the absence of authority to issue Executive Orders. Certainly, the discharge of "supreme Executive power" entails the capacity to issue Executive Orders to accomplish efficient administration within the Executive Branch. The prohibition goes to the issuance of Executive Orders intended to accomplish a legislative effect. The decision in Russell Petroleum Company v. Walker, 162 Okl. 216, 19 P.2d 582 (1933), is directly on point. The plaintiffs in that case sought to enjoin the Corporation Commission from closing an oil well for a violation of its proration orders as to production of oil from a common source of supply, and to enjoin an officer in the State militia from actually prorating oil output on plaintiff's property pursuant to Commission Orders. The Supreme Court of Oklahoma affirmed a decree by a District Court denying the application for injunction against the Corporation Commission, but observed that a materially different question was posed by the attempt to enjoin the officer in the State militia. The defense was made that the officer in question, Cicero I. Murray, and the militia under his command, were acting under the authority of two Executive Orders. The first of these orders stated: "Whereas, the decision of the Supreme Court of the United States in the Champlin case, recently decided, declared the penal clause of the law for violation of the proration law not drawn with such specific care as to render the same valid, and further held that the provision authorizing receivership for wells violating the law was invalid; and, "Whereas, the Corporation Commission has no authority to enforce its orders other than to fine as for contempt, and grave doubt exists that it has this authority, but, if so, this in effect, is but to license the violation of the law; and, "Whereas, great quantities of oil has been and is now being taken out of the field by certain companies, in violation of the proration orders of the Commission; and, "Now, therefore, I, William H. Murray, Governor of the State of Oklahoma, do hereby and hereon declare that the military zone around the several oil wells contained in my order of August 4, 1931, be continued, not only for the purpose of watching the enforcement of orders of proration but for the purpose of actually prorating the oil output in the Oklahoma City Field, . . . and for such last purpose there is hereby also declared a military zone around each and every storage tank to a distance of twenty-five (25) feet on each side thereof, the said military zones to include in addition the selection by the Governor of proration officers and all persons having to do with the enforcement of such orders; . . ." A supplemental Executive Order explaining the prior order stated: ". . . It is declared by the Chief Executive that it was and is the purpose and intention of said order to furnish the force and means necessary to enforce and carry out the orders of the Corporation Commission, made and promulgated for the purpose of regulating the production, transportation, and marketing of crude oil in the Oklahoma City Field, . . . ." In weighing the validity of these orders, the Supreme Court of Oklahoma held: "Under the provisions of Article VI, and Section 1, Article IV, of the Constitution, no order, proclamation, or decree of the Governor of the State, as the Chief Executive thereof, has the force of law; the lawmaking power of the State being vested exclusively elsewhere." (Emphasis added) This language of the Court makes it abundantly clear that Executive Orders do not have the force of law. The basis for this conclusion was the Court's determination that "the lawmaking power of the State is vested exclusively in the Legislature." Thus, Executive Orders intended to accomplish a legislative result are invalid The procedural requirements for creating a governmental agency are also relevant to the question raised. Article VI, Section 1, provides: "The Executive authority of the State shall be vested in a Governor, Lieutenant Governor, . . ., and other officers provided by law and this Constitution . . . ." It will be noted that the subject of these provisions is "Executive authority", as opposed to "Executive officers". The clear import is that it is the function discharged by an office or agency rather than the position it occupies within the governmental structure of the State which is dispositive. If a governmental entity is enclothed with Executive powers it is within the ambit of Article VI, Section 1, and must trace its origin to a specific statutory enactment or constitutional amendment. "Executive power" has been defined as the power to "execute" the laws, to carry them into effect. Tucker v. State, 218 Ind. 614, 35 N.E.2d 270, 291. Executive power extends downward to the detail of carrying into effect the laws of the State. State v. Huber, W.Va., 40 S.E.2d 11,18, 168 A.L.R. 808. The language of Article VI, 1, thus being exclusive, no officer or governmental entity can lawfully discharge Executive authority unless such office has been created by statutory enactment or constitutional amendment. Bryan v. Menefee, 21 Okl. 1, 95 P. 471 (1908), holding that a provision cannot be made in a general appropriation bill for the compensation of an officer or employee until the office has first been created, reflects this view. Thus, the foregoing authorities dictate a negative response to your first question. In view of the explicit holding that no Executive Order can have the force of law, and of the constitutional prohibition that no governmental entity can discharge Executive authority unless the same shall have been duly created by law, the answer to your first question is as follows: The Governor of the State of Oklahoma does not have the authority to create by Executive Order any governmental entity possessing the capacity to discharge Executive power. The second question raised inquires, in effect: Where a governmental entity of the State has been created solely by Executive Order, and such entity has subsequently expended public funds, are such expenditures valid? At the outset it should be noted that the officers and employees of agencies created pursuant to Executive Orders fall within the class of persons referred to as "de facto officers". 73 C.J.S., Public Administrative Bodies and Procedure, Section 25, defines a de facto officer as follows: "A person in possession of and actually performing the duties of an administrative officer or of a member of an administrative body under color of right or title . . . and his acts as such officer or member are valid as far as the public or third persons who have an interest in them are concerned . . . Color of right or title within the meaning of the rule may consist in an election and appointment . . . or acquiescence by the public for such length of time as to raise the presumption of a colorable right by election, appointment or other legal authority to hold such office." This view was expressed in Oklahoma in Ajax Contractors, Inc. v. Myatt, Okl. 424 P.2d 30 (1967), which held: "An 'officer de facto' is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interest of the public and third persons, where the functions of the office are exercised by one who is in the actual possession of it under color of title." In viewing the second question, the fact that numerous expenditures have already been made by such de facto officers cannot be disregarded. A significant degree of chaos and confusion would result from a retroactive invalidation of such expenditures. Accordingly, the following language contained in 67 C.J.S. Officers, Section 136, page 440, is applicable to your question: "As the rule is ordinarily stated there must be an existing office or office de jure to be filled before there can be an officer de facto. Where this rule is strictly adhered to in the case of an office created by an unconstitutional or invalid statute, the incumbent cannot be regarded as a de facto officer. According to another view, however, where chaos and confusion would result if the rule were strictly enforced public policy forbids rigid adherence thereto, and the incumbent's acts are regarded as those of a de facto officer until the statute has been condemned as unconstitutional or invalid by the courts." (Emphasis added) Thus, there is ample authority to uphold the validity of otherwise valid expenditures of officers and employees of agencies invalidly created under Executive Orders of the Governor. The chaos and confusion resulting from a retroactive invalidation of previous expenditures necessitates that rigid adherence to the general rule be avoided, and that the acts of the officers and employees in question be regarded as those of de facto officers. We are advised that there are a number of active boards and commissions that were created by Executive Orders of past Governors. These boards and commissions have been operating openly six and eight years and have expended sums of money pursuant to the terms of the Executive Orders by which they were created. To retroactively invalidate the previous expenditures of such boards and commissions would obviously create chaos and confusion. It is, therefore, the opinion of the Attorney General that your first question be answered in the negative. The Governor of the State of Oklahoma does not have the authority to create by Executive Order any governmental entity possessing the capacity to discharge executive power. It is further the opinion of the Attorney General that your second question be answered in the affirmative. Where a governmental entity of the State has been created by Executive Order and has subsequently expended public funds, such expenditures are valid until such time as it has been determined by a proper authority that the agency or entity in question has not been validly created. (Marvin C. Emerson) ** SEE OPINION NO. 88-032 (1989) **