## No. 10,747.

STONG, AUDITOR *v.* PEOPLE, EX REL. CURRAN.

Decided December 3, 1923.

Action in mandamus to compel the state auditor to issue warrant in payment of salary of a state employe.   Judgment for relator.

## *Affirmed.*

1.   CONSTITUTIONAL LAW—*Executive Practice.*   Long established and uniform executive practice would be persuasive, though not controlling, as to proper construction of a constitutional provision relating to the veto power.

2.   STATUTES—*Veto Power.*   The power of the Governor over legislation by the exercise of the veto, is a legislative power, and being in derogation of the general plan of the state government, the language conferring it must be strictly construed.

3.   GOVERNOR—*Veto Power.*   Under the provisions of article IV, section 12 of the Colorado Constitution, the Governor has no power to veto a portion of a separate, distinct and indivisible item in a general appropriation bill, such as the salary of a single employe.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. RUSSELL W. FLEMING, Attorney General, Mr. RILEY R. CLOUD, Assistant, for plaintiff in error.

Mr. WILLIAM R. EATON, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

RELATOR Curran is secretary of the Industrial Commission.   His salary was fixed by the Commission and an appropriation was made by the General Assembly accordingly.   The Governor disapproved a part of that appropriation.   Relator brought mandamus to compel the Auditor of State to issue warrants for the salary as originally

fixed. To review a judgment entered in relator's favor in that action plaintiff in error prosecutes this writ. The sole question here presented is the power of the Governor to veto a part of this item in the appropriation bill. If he has such power the judgment must be reversed, if not it must be affirmed.

Section 20 of the "Long Appropriation" Bill, (L. 1923 p. 27) made the appropriation for the Industrial Commission. (Id. pp. 49 and 50.) This includes eleven items. The one in question reads:

|  | "1923 | 1924 | Total |
|---|---|---|---|
| "Secretary (attorney) | $3500 | $3500 | $7000." |

(Id. p. 49.)

The indorsement of the Governor, so far as it relates to this matter, reads: "I approve all of this bill save and except the following: * * *. (8) The item contained in Sec. 20, page 12, as follows: 'Secretary (attorney) 3500.00, 3500.00, 7000.00,' of which item I approve $5250.00 and disapprove $1750.00 * * *.

Given under my hand and the Executive Seal this second day of May, A. D. 1923.

(Signed)     William E. Sweet

(Executive)                     Governor of the
(    Seal    )                   State of Colorado."

(Id. pp. 63, 64 and 65.)

The authority under which the action of the Governor must be upheld, if at all, is found in the following portion of section 12, article IV, of our Constitution:

"The Governor shall have power to disapprove of any item or items of any bill making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the item or items disapproved shall be void, * * *."

First examining the question in the light of executive precedent, we find this constitutional provision has come down unchanged from the date of Colorado's admission to statehood. The first exercise of the veto under it was in 1891, when Governor Routt disapproved an entire item

of $18,750.00 for the purchase of 1250 sets of statutes.   If this indicates anything it is that the Governor vetoed the entire appropriation because he thought he had no power to veto a part.   The only other vetoes appearing, aside from those of the present Executive, are by Governor Ammons in 1913, Governor Carlson in 1915, and Governor Gunter in 1916.   Each of these disapproved of parts of items similar to the one here under consideration.   We find nothing to indicate that Governor Ammons took the opinion of the Attorney General on the question and it seems reasonable to conclude that the others merely followed the precedent thus set.   Long established and uniform executive practice would be persuasive, though not controlling.   These few and doubtful precedents carry little weight.

Turning next to the authorities we find them few and conflicting, and the constitutional provisions on which they rest varying both in letter and spirit.   Of the cases cited fourteen only require notice, and for convenience we number them.   The first twelve are:   (1) *State v. Holder,* 76 Miss. 158, 23 So. 643; (2) *Miller v. Walley,* 122 Miss. 521, 84 So. 466; (3) *May v. Topping,* 65 W. Va. 656, 64 S. E. 848; (4) *Regents v. Trapp,* 28 Okl. 83, 113 Pac. 910; (5) *Carter v. Rathburn,* 85 Okl. 251, 209 Pac. 944; (6) *Fulmore v. Lane,* 104 Tex. 499, 140 S. W. 405; (7) *Nowell v. Harrington,* 122 Md. 487, 89 Atl. 1098; (8) *Callaghan v. Boyce,* 17 Ariz. 433, 153 Pac. 773; (9) *Fairfield v. Foster,* (Ariz.) 214 Pac. 319; (10) *State v. Forsyth,* 21 Wyo. 359, 133 Pac. 521; (11) *Fergus v. Russel,* 270 Ill. 304, 110 N.' E. 130, Ann. Cas. 1916B, 1120; (12) *People v. Brady,* 277 Ill. 124, 115 N. E. 204.

No one of the foregoing is in point for the following reasons:

In case No. 1 the question was very similar to that decided in case No. 8 and the power of the Governor to veto a part of an item was not involved.

In case No. 2 the question was very similar to that in case No. 5, and said power was not involved.   The section

of the Constitution of Mississippi corresponding to the clause of our Constitution here under examination does not use the word "item."

In case No. 3 the question was substantially the same as in case No. 5.

In case No. 4 the Legislature had made a lump appropriation of $285,810.23 for the State University and had then apportioned that appropriation under four subheads covering some twenty-five specific objects. Of the latter the Governor attempted to disapprove fifteen, totaling $94,800.00. The court held that the bill embraced but a single item, the lump sum above mentioned, and that the Governor had not disapproved an item or a part of an item, but had attempted to disapprove the legislative method of distribution. On that ground alone the veto was held void and the court expressly disavowed the necessity of deciding therein the power in question here.

In case No. 5 the appropriation was passed and the Legislature adjourned May 21, 1921. Ten days later the Governor disapproved the item. The Constitution provided that such a disapproval should be effective only upon the return of the bill by the Governor to the House in which it originated while that body was still in session. For such failure to return the veto was held void.

In case No. 6 an appropriation was made for the Attorney General's office and divided into equal sums for the years 1912 and 1913. The Governor struck out the total and disapproved the item for 1913. The court held that there were two items of appropriation of which the Governor had disapproved one. His right to disapprove a part of an item was not decided.

In case No. 7 it appears that under the Constitution of Maryland no bill could become a law without the Governor's approval if submitted to him after the adjournment of the Legislature. The appropriation there under consideration was so submitted and he attempted to veto a portion of it. This partial disapproval the court construed as no approval and hence held the appropriation

invalid. The question now before us was presented but the court declined to decide it saying "It was not passed on by the lower court and it is not necessary for us to do so."

In case No. 8 an item in a general appropriation bill had a double aspect. It made an appropriation to pay a salary and repealed an existing statute. The Governor attempted to approve the appropriation and veto the repeal and his veto was held void. The question here under consideration was not involved.

In case No. 9 the peculiar construction resorted to in case No. 4 is specifically disapproved as "utterly untenable on any theory of construction consonant with the plain purpose of the Constitution," and the court holds that the Governor's veto of an appropriation of $2100.00 salary per annum for a rate clerk, being a portion of a lump appropriation of $53,880.00 "for salaries and wages," was in fact a veto of an item *in toto* and as such upholds it. Having so decided no question of the power of the Governor to veto a part of an item remained in the case hence the court's disapproval of the doctrine announced in Commonwealth v. Barnett, hereinafter referred to, was dictum. It is, however, valuable, like the remainder of this remarkably able opinion, for the lucidity of its reasoning and the terseness of its expression.

In case No. 10 the question here involved was raised and discussed but inasmuch as there remained in the appropriation sufficient funds to pay the bill in question the court held that it was "unnecessary to determine the matter," and left it there.

In case No. 11 the Supreme Court of Illinois denies the right of the Governor to disapprove a part of an item, conceding that holding to be contrary to the conclusion in *Commonwealth v. Barnett, infra,* and rests the decision upon the difference in the wording of the Constitutions of Illinois and Pennsylvania. As our Constitution follows Pennsylvania rather than Illinois the decision is not applicable here.

In case No. 12 the question involved is identical with that in numbers 4 and 9 and the Supreme Court of Illinois repudiates the Oklahoma rule for the same reasons given by the Supreme Court of Arizona in case No. 9.

We come now to the two remaining authorities, both, in their conclusions at least, in point.

The Constitution of Pennsylvania provides: "The Governor shall have power to disapprove of any item or items of any bill, making appropriations of money, embracing distinct items, and the part or parts of the bill approved shall be law, and the item or items *of appropriation* disapproved shall be void, * * *."

It will be observed that this provision is identical with our own save for the inclusion of the words "of appropriation," and that it is impossible to give to those words any interpretation which will alter the meaning of the section. The Legislature of Pennsylvania appropriated for the public schools $11,000,000.00 for the two years 1899 and 1900 and provided that out of that amount certain specified payments should be made. The Governor vetoed some of the latter. The Supreme Court of that state held that the words "item" and "part", as used in the provision above quoted, were "used interchangeably in the same sense." Referring to the separate sums directed to be paid out of the total appropriation the court says they are "distinct and severable parts, each of which is an 'item', within the purpose, intent, and meaning of the constitutional provision under consideration." If so the veto was of course a disapproval of an entire item. In another portion of the opinion, however, the subject is otherwise considered. After pointing out that the practice has been followed by several Governors of that Commonwealth, Mr. Justice Mitchell says that these "all rest on the same principle—the right of the Governor, in the exercise of his independent legislative judgment, to approve an appropriation in part, by reducing the amount fixed by the Legislature." (13) *Commonwealth v. Barnett,* 199 Pa. 161, 48 Atl. 976, 55 L. R. A. 882.

The opinion is thus made authority for the power of the Governor to disapprove a part of an item and is so considered by numerous courts of last resort which have had occasion to refer to it. Assuming that the item there under consideration which was vetoed by the Governor was the payment of a specific sum, out of the said $11,000,000.00, to a specific school or institution, there was no veto of a part of an item and the case is not applicable here. Adopting the other view, that the $11,000,-000.00 was the item of appropriation of which the Governor vetoed a part, the facts are so dissimilar that the only portion of the opinion here applicable is the court's conclusion. With that we are forced to disagree.

The Constitution of Oklahoma provides: "Every bill passed by the Legislature, making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the Governor; if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, * * * *."

This appears to us identical with the corresponding section of our own Constitution. The Legislature of Oklahoma appropriated for salaries for the State University $700,-000.00 for the year ending June 30, 1924, and $720,000.00 for the year ending June 30, 1925. Each of these the Governor approved in the sum of $500,000.00 only, and disapproved the remainder. The Supreme Court of that state held these to be distinct items and the Governor's disapproval to be a veto of a part of an item and unconstitutional, saying: "The action of the Governor in attempting to approve in part and disapprove in part the distinct items of an appropriation bill was without constitutional warrant, and therefore ineffectual for any purpose."

Case No. 13 is referred to and the difference in the wording of the Constitutions of Pennsylvania and Oklahoma assigned as a sufficient basis for the conflicting decisions. (14) *Peebly v. Childers,* (Okla.) 217 Pac. 1049. The difference in language is there but, the difference in meaning escapes us. We think these two authorities irreconcilable. The reasoning of neither, on the particular question before us, meets with our approval. Each deals with a single enormous appropriation which it is perfectly apparent must have included numerous distinct items and thus conditions are presented differing materially from those with which we are confronted, the attempted veto of a part of a single, distinct and indivisible item, i. e., the salary of a single employee.

Authority having thus failed us we are obliged to treat this question as *sui generis.*

Article III of the Colorado Constitution provides: "The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this Constitution expressly directed or permitted."

The power of the Governor over legislation by the exercise of the veto is a legislative power. It can only be exercised when clearly authorized by a specific provision of the Constitution, not only because said article III so requires, but because, being a power in derogation of the general plan of the state government, the language conferring it must be strictly construed. Article IV, section 12, grants the power to veto an item, but no power to veto a part of an item unless consideration of the purpose of the section and the evils at which it was aimed make such a construction indispensable to effectuate it.

The Pennsylvania court, in case No. 13, points out that the evils sought to be obviated by such constitutional provisions as the one here under consideration were; "omni-

bus" appropriation bills; "log rolling", the practice of
jumbling together in one act incongruous subjects in order
to force a passage by uniting minorities with different in-
terests when the particular provisions could not pass on
their separate merits; and "riders", objectionable legisla-
tion attached to general appropriation bills in order to
force the Governor to veto the entire bill and thus stop
the wheels of government or approve the obnoxious act.
That statement is doubtless correct. The court then says:
"If the legislature by putting purpose, subject and amount
inseparably together and calling them an item, can coerce
the governor to approve the whole or none, then the old
evil is revived which this section was intended to destroy."

Assuming the correctness of that conclusion as applied
to such "items" as the one the court there had under con-
sideration, i. e., $11,000,000.00 for public schools, it has no
application to the facts before us where the purpose, sub-
ject and amount are parts of a single item, distinct, sepa-
rate and indivisible.

Judge Lockwood, in the opinion in case No. 9, cites with
approval that portion of the opinion in case No. 13 setting
forth the evils which the constitutional clause was in-
tended to remedy. He then points out that to hold the lump
sum to be an "item" of which the Governor cannot veto a
part—"renders utterly nugatory the attempt of the con-
stitutional convention to meet the very definite evil above
referred to. If we follow that line of reasoning, the Legis-
lature may simply make a separate appropriation in any
lump sum for each department, or, by proper language in
the general appropriation bill, consolidate the funds for
almost the entire state government, and, under guise of
'directing' the expenditure of the money, limit its applica-
tion to matters and amounts which the Governor believes
to be highly injurious in part to the best interests of the
state, practically compelling him to choose between aban-
doning the veto power, or suspending the operations of
the government, thus nullifying the provisions of the Con-
stiution under consideration, and going back to the very

conditions its makers sought to avoid. * * * If this construction be upheld, obviously the next step for a Legislature hostile to a future Governor will be a further consolidation of the 'items' of the appropriation bill, with a 'direction' of how the money shall be spent, until the special veto is practically abolished." * * * "We believe such a rule (that announced in the Barnett case) would transform the merely negative legislative power of the Governor into an affirmative one, and that it would be in consonance with neither the plain language of the Constitution nor the purpose of its makers."

With all of which reasoning we agree.

It inevitably follows from the foregoing that whatever may be the power of the Governor under our Constitution to veto a portion of a so-called "item" which is not in fact a "distinct item" but an omnibus appropriation for numerous purposes (a question not here involved and which we do not decide), he certainly has no power to veto a portion of a separate, distinct and indivisible item such as the one here under consideration. Such a power is legislative, its exercise is forbidden unless expressly directed or permitted by the Constitution, it is not so directed or permitted unless found indispensable to effectuate the plain purpose of said section 12 of article IV, and it is not so found.

The judgment is accordingly affirmed.