On Application for Rehearing

STUART, Justice.
This Court’s opinion of April 3, 2009, is withdrawn, and the following is substituted therefor.
Hank Sanders and Roger Bedford, members of the Alabama Senate; John Knight, a member of the Alabama House of Representatives; and the Joint Fiscal Committee of the Alabama Legislature, of which Sanders, Bedford, and Knight are members (the individual legislators and the Joint Fiscal Committee are hereinafter referred to collectively as “the legislators”), sued Governor Bob Riley and the state comptroller, Robert L. Childree (hereinafter referred to collectively as “the Riley administration”), in the Montgomery Circuit Court, seeking a judgment declaring that Governor Riley’s use of the line-item veto to veto § 4 of House Bill 328 (“H.B. 328”), the general-fund appropriations bill for fiscal year 2009 (October 1, 2008, through September 30, 2009), was unconstitutional and also seeking injunc- *1152 tive relief. The trial court entered a summary judgment in favor of the legislators, and the Riley administration now appeals. We affirm.
I.
We set forth the facts at the root of this dispute in our previous opinion denying the Riley administration’s petition for a writ of mandamus seeking the dismissal of the legislators’ complaint. We stated:
“The underlying action arises from Governor Riley’s veto of § 4 of House Bill 328 (‘H.B. 328’), the general-fund appropriations bill for fiscal year 2009, enacted during the 2008 Regular Session of the Alabama Legislature. That section provides, in pertinent part:
“ ‘Of the amounts appropriated in this act from the State General Fund for the fiscal year ending September 30, 2009, 17.75% of each appropriation is conditioned upon the availability of funds in the State General Fund, the recommendation of the Director of Finance, and the approval of the Governor with the exception of the following appropriations from the State General
Fund to the following agencies:
“ ‘Alabama Medicaid Agency $622,478,155
“ ‘Alabama Department of ¡Public Health $ 84,641,324
“ ‘Alabama Department of Senior Services $ 17,554,599
“ ‘Alabama Department of Human Resources $112,881,321
“ ‘Alabama Department of Mental Health and Mental Retardation $143,258,026
“ ‘Department of Child Abuse and Neglect Prevention $ 1,011,610
“ ‘The above-listed appropriations shall be funded in their entirety from the State General Fund in [fiscal year] 2009. In the event funds are not available to fully fund the conditional appropriations from the State General Fund made in this section to other agencies, the Governor shall apportion available funds in the General Fund proportionately across-the-board to those agencies for the fiscal year that ends September 30, 2009. In the event revenue is not available to fund all of these conditional appropriations, earmarked items and line-item appropriations shall be released proportionately. On October 30, 2008, the Governor shall certify to the Director of Finance and notify the Chair of the Senate Finance and Taxation-General Fund Committee, the Chair of the House Government Appropriations Committee, and the Legislative Fiscal Officer the amount of projected available revenue in the State General Fund and the source of the additional revenue available to fund all or any portion of the conditional appropriations made in this section. The conditional appropriations made in this section from the State General Fund are first priority conditional appropriations and shall be released in their entirety before any other conditional appropriations from the State General Fund may be released. The amount of revenue certified by the Governor on October 15, 2008[sic],m to be available for the conditional State General Fund appropriations made in this section shall be the amount of funds allocated proportionately to each agency for its operation plan for [fiscal year] 2009.’
“On May 19, 2008, pursuant to Ala. Const.1901, Art. V, § 126,[2] Governor Riley sent a message to the legislature that he was disapproving § 4 of H.B. 328:
“ ‘Beginning on page 128, line 10, by striking through line 10 and each subsequent line, through line 20, on page 128, and resuming on page 129, line 1, and striking through that line 1 and each subsequent line on page 129, through line 23, and resuming on *1153 page 130, line 1, strike through said line and each succeeding line through line 7, thus striking and deleting the entire section 4 of said bill. This item, or these items, are both illegal under the laws of the State of Alabama and unconstitutional under the Constitution of the State of Alabama. In the Alabama Constitution of 1901, as amended, in Article XI, Section 213, there is a specific constitutional requirement that the state comptroller shall issue warrants for that proportion of each claim which the money available for payment of all claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the state treasurer. This provision clearly imposes a constitutional obligation on the state comptroller to prorate, both across the board, proportionately to all departments and agencies. Similarly, under state law, Code of Alabama, § 41-4-90, requires the governor, in the event the estimated budget resources during the budget year are not sufficient to pay all appropriations in full, to restrict allotments to prevent an overdraft or deficit in any fiscal year for which appropriations are made, by prorating, without discrimination against any department, board, bureau, commission, agency, office, or institution of the state, the available revenues among the various departments, boards, bureaus, commissions, agencies, offices, and institutions of the state. The law goes further to more specifically state, “in other words, said appropriations shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimate by the Department of Finance as available in each of said fiscal years.”
“ ‘The Legislature, in its appropriation bill, House Bill 328, cannot supersede, change, alter, or amend either this constitutional amendment or this statutory provision, both of which require proportional proration among all recipients of state funds in said appropriations bill.
“ ‘Although well intended, in the unfortunate event that proration becomes necessary, the Legislature cannot provide, either constitutionally or legally, special protection for any individual agencies or departments of state government.
“ ‘For these reasons I have found it necessary to line item veto said bill. I most sincerely encourage you to agree with my disapproval of said item, or items. Done this 19th day of May, 2008.’
“Section 126, Ala. Const.1901, does provide that the legislature may ‘repass’ the vetoed item; however, Governor Riley’s message was delivered to the legislature on the last day of the 2008 Regular Session of the Alabama Legislature. In an affidavit filed with the trial court, Greg Pappas, the clerk of the Alabama House of Representatives, testified that at 11:54 p.m. on May 19, 2008, as a motion for adjournment sine die was being made, he was given Governor Riley’s message vetoing § 4 of H.B. 328. The motion to adjourn was passed at 11:55 p.m. Thus, the legislature had no opportunity to address Governor Riley’s action while it was in session.
“1 The disparity in the October 30, 2008, date in a preceding sentence and the October 15, 2008, date as the date that Governor Riley certifies the amount of funds available for conditional appropriations is not explained.
“2 Section 126 provides:
*1154 “ ‘The governor shall have power to approve or disapprove any item or items of any appropriation bill embracing distinct items, and the part or parts of the bill approved shall be the law, and the item or items disapproved shall be void, unless repassed according to the rule and limitations prescribed for the passage of bills over the executive veto; and he shall in writing state specifically the item or items he disapproves, setting the same out in full in his message, but in such case the enrolled bill shall not be returned with the governor’s objection.’ ”
Ex parte Riley, 11 So.3d 801, 803-805 (Ala. 2008).
Following our denial of the Riley administration’s petition for the writ of mandamus, proceedings in the trial court resumed, and the Riley administration filed an answer to the legislators’ complaint. On January 9, 2009, the trial court held a hearing on the legislators’ motion for a summary judgment, which had been filed and to which the Riley administration had responded before this Court stayed the proceedings in the trial court to consider the Riley administration’s petition for a writ of mandamus. On January 16, 2009, the trial court granted the legislators’ summary-judgment motion, holding that Governor Riley’s veto of § 4 of H.B. 328 was unconstitutional because, in the message transmitting news of that veto to the legislature, Governor Riley had merely referred to the “item or items” he was purporting to veto by line, section, and page number as opposed to setting the item or items “out in full” as required by Ala. Const.1901, Art. V, § 126. The trial court also rejected the Riley administration’s argument that § 4 of H.B. 328 was itself unconstitutional and therefore unenforceable regardless of any procedural defects in Governor Riley’s attempted veto. That same day, the Riley administration filed its notice of appeal to this Court, and the trial court stayed its order pending our resolution of this appeal.
II.
The Riley administration argues, first, that the message Governor Riley sent to the legislature notifying it that he was, under § 126, exercising his line-item veto authority to veto § 4 of H.B. 328 complied with the procedural requirement in § 126 that the governor “in writing state specifically the item or items he disapproves, setting the same out in full in his message .... ” The Riley administration argues that § 126 does not require Governor Riley to quote the disapproved item or items in his message to the legislature, only to clearly identify that item or those items for the legislative record, which, the Riley administration alleges, Governor Riley did by citing the relevant line, page, and section numbers. However, although we agree that Governor Riley clearly identified the disapproved items, we cannot agree that his shorthand identification of those items is tantamount to “setting the same out in full” or that his failure to do so is inconsequential.
“The authority to determine the amount of appropriations necessary for the performance of the essential functions of government is vested fully and exclusively in the legislature.” Morgan County Comm’n v. Powell, 292 Ala. 300, 306, 293 So.2d 830, 834 (1974) (citing Abramson v. Hard, 229 Ala. 2, 155 So. 590 (1934)). Section 126 of the constitution grants the governor line-item veto power, which can be used to disapprove specific items in an appropriations bill; however, when he exercises that power the governor is performing a traditionally legislative function. Therefore, in order to ensure that the *1155 governor does not exceed the limited authority given by § 126 and impermissibly encroach upon the functions of the legislative branch, § 126 must “be narrowly or strictly construed so as not to thwart the lawmaking powers of the legislative department.” Hunt v. Hubbert, 588 So.2d 848, 864 (Ala.1991) (Houston, J., concurring in the result). See also Stong v. People, 74 Colo. 283, 290, 220 P. 999, 1002 (1923) (“The power of the Governor over legislation by the exercise of the veto is a legislative power. It can only be exercised when clearly authorized by a specific provision of the Constitution not only because said article 3 [providing for separation of powers] so requires, but because, being a power in derogation of the general plan of the state government, the language conferring it must be strictly construed.”).
For this reason, it is insufficient that Governor Riley identified by line and page number the entirety of § 4 of H.B. 328 as the disapproved item in his veto message; he was required by § 126 to “set[ ] the same out in full.” The natural, plain, ordinary, and commonly understood meaning of the phrase “setting the same out in full” is that the disapproved item is to be written out in its entirety. It is undisputed that Governor Riley failed to do this in his message to the legislature purporting to veto § 4 of H.B. 328. Accordingly, that veto is of no effect. See State ex rel. Robertson v. McGough, 118 Ala. 159, 166, 24 So. 395, 397 (1898) (“Whenever a constitutional provision is plain and unambiguous, when no two meanings can be placed on the words employed, it is mandatory, and courts are bound to obey it.”).[1]
III.
The Riley administration argues that, even if we hold that Governor Riley’s attempted veto of § 4 of H.B. 328 is void for failure to comply with § 126, § 4 of H.B. 328 is nevertheless unenforceable, because, it argues, it is unconstitutional.[2] The Riley administration argues that § 4 of H.B. 328 violates both Ala. Const.1901, Art. XI, § 213, and Art. IV, § 71. Section 213 provides:
“In case there is, at the end of any fiscal year, insufficient money in the state *1156 treasury for the payment of all proper claims presented to the state comptroller for the issuance of warrants, the comptroller shall issue warrants for that proportion of each such claim which the money available for the payment of all said claims bears to the whole, and such warrants for such prorated sums shall thereupon be paid by the state treasurer.”
Section 71 provides:
“The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for the public schools.... All other appropriations shall be made by separate bills, each embracing but one subject.”
We examine these arguments in turn.[3]
Section 213 details the manner in which appropriations are to be reduced in the event there is a gap between the total appropriations made by the legislature and the amount available to the State to fund those appropriations. Specifically, it sets out a formula providing that all claims for appropriated funds will be funded proportionally. In other words, all claimants will have their appropriations reduced pro rata, or by the same percentage. See Opinion of the Justices No. 156, 265 Ala. 501, 503, 92 So.2d 429, 431 (1957) (“[T]he Constitution itself reduces an appropriation according to a constitutional formula from that amount fixed by the Legislature to a lesser amount as determined by the Constitution.”). Clearly then, under § 213, all State agencies and departments are subject to the same pro rata reductions in the event of a shortfall in funds, and neither the governor nor the legislature can spare a favored agency from those reductions without violating § 213.
In § 2 of H.B. 328, the legislature sets forth the specific appropriations it is making for fiscal year 2009 — subsection 2A details appropriations to the legislative branch, subsection 2B details appropriations to the judicial branch, and subsection 2C details appropriations to the executive branch. As an example, in item number 20 in subsection 2C, the legislature appropriated $100,000 from the general fund to Brierfield Ironworks Park. Section 2 of H.B. 328 contains nothing other than these types of appropriations.
In § 4 of H.B. 328, however, the legislature states that 17.75% of each appropriation made in § 2 is conditioned upon the availability of funds, with the exception of six specified social-service agencies (“the protected agencies”), which § 4 provides “shall be funded in their entirety.” The Riley administration argues that this added contingency — that 17.75% of the appropriations made in § 2 to other agencies (“the nonprotected agencies”) is contingent upon the availability of funds— is clearly an attempt by the legislature to dictate how appropriations should be reduced in the event of a shortfall, i.e., in the event the total amount of appropriations exceeds the amount of revenue available to fund those appropriations. Therefore, the Riley administration argues, because § 213 already speaks to precisely this subject, that is, how to reduce appropriations in the *1157 event of a shortfall, and sets forth a different formula for reducing appropriations, § 4 of H.B. 328 is unconstitutional and must therefore cede to § 218.
The legislators, however, argue that nowhere in H.B. 328 is there a formula for reducing appropriations. When §§ 2 and 4 of H.B. 328 are read together, as they must be, the legislators argue, it is clear that there has been no reduction in the appropriation for any agency; rather, they argue, every agency, with the exception of the protected agencies, is appropriated an absolute amount equal to 82.25% of the amount listed and appropriated an additional 17.75% of that amount contingent upon there being sufficient funds in the general fund. Thus, returning to our example of Brierfield Ironworks Park, the legislators would argue that, in H.B. 328, Brierfield Ironworks Park received an absolute appropriation of $82,250 and a conditional appropriation of $17,750, not a blanket appropriation of $100,000 as the Riley administration argues. The legislators further argue that the “effect” of § 4 of H.B. 328 as written is exactly the same as if the legislature had simply listed all the absolute appropriations in one section of an appropriations bill and then listed all the conditional appropriations in the following section. (Legislators’ brief, pp. 59-60.)
The relevant question before this Court then is whether we should adopt the interpretation of H.B. 328 the Riley administration urges, in which the legislature makes a series of essentially absolute appropriations in § 2 and then almost immediately reduces those appropriations in § 4, or the interpretation of H.B. 328 the legislators urge, in which 82.25% of each appropriation in § 2 is absolute and § 4 makes an additional conditional appropriation of 17.75% — with the exception that 100% of the appropriations to the protected agen-cíes are absolute. If we adopt the interpretation of H.B. 328 urged by the Riley administration, we would be required to declare § 4 of H.B. 328 unconstitutional as violating § 213. However, we have previously stated that “acts of the legislature are presumed constitutional,” State ex rel. King v. Morton, 955 So.2d 1012, 1017 (Ala.2006) (citing State v. Alabama Mun. Ins. Corp, 730 So.2d 107, 110 (Ala.1998)), and further that “we are obliged to construe statutes so as to avoid conflicts with constitutional provisions if possible.” City of Homewood v. Bharat, LLC, 931 So.2d 697, 701 (Ala.2005) (citing James v. Todd, 267 Ala. 495, 505, 103 So.2d 19, 27 (1957)). See also Alabama State Fed’n of Labor v. McAdory, 246 Ala. 1, 9, 18 So.2d 810, 815 (1944) (“[I]n passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government.”). When we afford H.B. 328 that presumption of constitutionality and consider it as a whole, we must interpret it in the manner urged by the legislators and conclude that H.B. 328 does not offend § 213.
We next consider the Riley administration’s argument that § 4 of H.B. 328 conflicts with § 71 of the Alabama Constitution, which, the Riley administration argues, bars the legislature from including anything other than appropriations in the general-appropriations bill. However, although we agree with the general principle that § 71 bars the legislature from addressing matters other than appropriations in a general-appropriations bill, we cannot conclude that that is what the legislature has done in H.B. 328. Rather, the legislature in H.B. 328 merely imposed a condition upon certain appropriations — that the State treasury have sufficient funds to sat *1158 isfy those appropriations. This condition does not, in our view, change the intrinsic nature of those appropriations as appropriations so as to run afoul of § 71. See, e.g., South Dakota Educ. Ass’n v. Barnett, 582 N.W.2d 386, 392 (S.D.1998) (stating that even though the South Dakota legislature is forbidden from enacting, via the general appropriations bill, substantive legislation that changes, amends, or repeals existing law, it is nevertheless “free to impose conditions and restrictions on appropriated funds within the body of a general appropriations bill”).
The Riley administration nevertheless alleges that § 4 of H.B. 328 violates § 71 in the following four ways:
1. It places the responsibility upon the governor to estimate how much revenue will be available for fiscal year 2009 while § 41-4-90, Ala.Code 1975, places that responsibility upon the director of finance;
2. It creates an alternative process for reducing appropriations in the event of a budget shortfall, which process is inconsistent with § 213 and § 41-4-90;
3. It fails to ensure that there is adequate funding for constitutionally required appropriations, such as for the judicial branch of government, even though this Court has stated that the governor, when cutting appropriations, is required to consult with the chief justice to ensure that remaining appropriations are adequate for constitutionally mandated services, see Folsom v. Wynn, 631 So.2d 890 (Ala.1993); and
4. It takes away the discretion given the director of finance in § 41-19-10 to modify the funds agencies receive during the year if expenditures are greater than necessary or revenues are insufficient.
In regard to the Riley administration’s second argument, we have already noted that § 4 of H.B. 328, properly interpreted, does not actually reduce any appropriations; therefore, H.B. 328 does not conflict with existing law surrounding proration or with the constitutional formula for reducing appropriations when revenues are insufficient to fund the appropriations. Similarly, the Riley administration’s third argument, which is premised on this Court’s holding in Folsom v. Wynn, is premised on a reduction in the amount appropriated the judicial branch; however, in the absence of any true cuts to absolute appropriations there is no conflict with existing law. Finally, the Riley administration also objects to the language in § 4 of H.B. 328 requiring the governor to estimate the amount of revenue that will be available as conflicting with § 41-4-90, which provides that, in the event proration is necessary, “appropriations shall be payable in such proportion as the total sum of all appropriations bears to the total revenues estimated by the Department of Finance ....” Section 4 of H.B. 328, however, provides that the conditional appropriation of 17.75% made to the nonprotected agencies shall be allocated proportionately based on the amount of revenue the governor estimates is available. Nevertheless, although § 41-4-90 contemplates an estimate of available funds prepared by the Department of Finance and § 4 of H.B. 328 contemplates a similar estimate prepared by the governor, there is no conflict because § 41-4-90 has a field of operation when proration is declared and appropriations are being reduced and § 4 of H.B. 328 addresses how the conditional appropriations made in H.B. 328 are funded. If those conditional appropriations are being funded in a manner consistent with § 4 of H.B. 328, then § 41- *1159 4-90 has no field of operation because funding the conditional appropriations according to § 4 necessarily means that there were sufficient funds for all absolute appropriations and that proration was not necessary.
The Riley administration’s remaining argument, that § 4 of H.B. 328 conflicts with § 41-19-10 inasmuch as it purports to take away the director of finance’s discretion to modify the funds an agency receives during the year if expenditures are greater than necessary or revenues are insufficient, may or may not have merit; however, we are ultimately prevented from addressing that argument because, although the Riley administration specifically made the three preceding arguments in the trial court, it did not make the fourth argument in the trial court. In the brief the Riley administration filed with the trial court in opposition to the legislators’ motion for a summary judgment, it summarized its arguments as to how § 4 of H.B. 328 violated § 71 with a table (see Riley administration’s trial-court brief, pp. 24-25, attached to this opinion as Appendix A). That table identified three ways in which § 4 of H.B. 328 allegedly modified existing law — the same three arguments discussed immediately above. Although § 41-19-10 is cited in the context of whether § 4 of H.B. 328 modifies existing law in regard to the “[p]rocess for determining how much revenue is available for paying appropriations,” it is not quoted or otherwise referred to, nor is there any discussion of whether § 4 of H.B. 328 abrogates the discretion given the director of finance in § 41-19-10 to modify the funds an agency receives during the year if expenditures are greater than necessary or revenues are insufficient.
In its brief to this Court, the Riley administration again relies on a table to illustrate the ways in which § 4 of H.B. 328 violates § 71 by allegedly modifying existing law (see Riley administration’s brief, p. 46, attached to this opinion as Appendix B). This table is substantially identical to the table included in the Riley administration’s trial-court brief; however, it has been expanded to include a fourth way in which § 4 of H.B. 328 conflicts with existing law — by allegedly taking away the discretion afforded the executive branch in § 41 — 19—10(c)(3) “to spend funds according to shifting priorities and revenues.” This is apparently the first time this argument has been articulated by the Riley administration; it was not included in its trial-court brief, nor is it found anywhere else in the record. Notably, the trial court’s order entering a summary judgment in favor of the legislators is completely silent as to this issue. “This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991)). For that reason, we do not reach the merits of this argument.
TV.
The trial court entered a summary judgment in favor of the legislators, holding that Governor Riley’s veto of § 4 of H.B. 328 was unconstitutional because it failed to comply with the procedural requirements of § 126. The trial court also rejected the Riley administration’s argument that § 4 of H.B. 328 was unconstitutional, holding that § 4 of H.B. 328 was in fact “lawful and of full effect.” For the reasons set forth above, that judgment is hereby affirmed.
APPLICATION GRANTED; OPINION OF APRIL 3, 2009, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
*1160 COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
[[Image here]]
*1161 [[Image here]]
*1162 [[Image here]]

. The legislators have also argued that Governor Riley's attempted veto of § 4 of H.B. 328 does not comply with § 126 because, they argue, § 4 is not an “item or items” subject to the line-item veto; rather, they argue, it is a condition placed upon certain appropriations. The legislators argue that the term “item” in § 126 applies only to a specific sum of money designated for a specific purpose, while the Riley administration argues that the term “item" refers to any enumerated part of an appropriations bill. However, because we have already held that Governor Riley's veto is void because it did not comply with the procedural requirements of § 126, we need not address the merits of this argument.

. The legislators argue that the issue of the constitutionality of § 4 was not properly raised because, they allege, the only issue raised by their complaint was the constitutionality of Governor Riley's veto. Although the legislators acknowledge that the Riley administration asserted as an affirmative defense that § 4 of H.B. 328 was unconstitutional, they argue that the Riley administration should have made that assertion as a counterclaim if it desired to raise the issue. We disagree. Assuming for the sake of argument that the legislators are correct and that the Riley administration should have labeled as a counterclaim its assertion that § 4 of H.B. 328 is unconstitutional, Rule 8(c), Ala. R. Civ. P., nevertheless provides that an affirmative defense that is mistakenly designated as a counterclaim, or a counterclaim that is erroneously labeled an affirmative defense, should be treated "as if there had been a proper designation.” Most importantly, the constitutionality of § 4 was argued by both sides at the trial-court level, and the trial court definitively ruled on the issue. Moreover, the Riley administration specifically identified the constitutionality of § 4 of H.B. 328 as an issue on appeal, and both sides have argued the merits of that issue to this Court.

. The Riley administration has properly raised the issues whether § 4 of H.B. 328 is in conflict with both §§213 and 71 of the Alabama Constitution. At oral argument, a question arose as to whether the Riley administration had raised the issue whether § 4 of H.B. 328 also conflicts with § 126 of the Alabama Constitution; the parties subsequently filed letter briefs addressing that issue. Upon reviewing the record and the briefs, we must conclude that this argument is not properly before us. Accordingly, we express no opinion as to its merits.