580

731 S.E.2d 722

**Darrick JACKSON, as Mayor of the Town
of Timmonsville, Petitioner,**

v.

**Mark SANFORD, Governor of the State of South Carolina and as
Chairman and Ex–Officio Member of the State Budget and
Control Board; Converse Chellis, Treasurer of the State of
South Carolina, Richard Eckstrom, Comptroller General of the
State of South Carolina, Hugh Leatherman, Chairman of the
Finance Committee of the South Carolina Senate, Daniel T.
Cooper, Chairman of the Ways and Means Committee of the
South Carolina House of Representatives, as Ex–Officio Mem-
bers of the State Budget and Control Board; Frank Fusco,
Executive Director of the State Budget and Control Board;
Glenn F. McConnell, President Pro Tempore of the South
Carolina Senate; and Robert W. Harrell, Jr., Speaker of the
South Carolina House of Representatives, Respondents.**

No. 26918.

Supreme Court of South Carolina.

Heard Dec. 2, 2010.

Decided Jan. 24, 2011.

James Emerson Smith, Jr., and Debra Sherman Tedeschi, both of Columbia, for Petitioner.

Kevin A. Hall, Karl S. Bowers, Jr., and M. Todd Carroll, all of Columbia, for Respondents Sanford and Eckstrom.

William F. Cotty, and Donald E. Jonas, both of Columbia, for Respondent Chellis.

Robert E. Stepp, Roland M. Franklin, Jr., and Tina M. Cundari, all of Sowell, Gray, Stepp & Laffitte, of Columbia, for Respondent Leatherman.

C. Mitchell Brown, and Michael J. Anzelmo, both of Nelson, Mullins, Riley & Scarborough, of Columbia, for Respondents Harrell and Cooper.

Vance J. Bettis, of Gignilliat, Savitz & Bettis, of Columbia, for Respondent Fusco.

Michael R. Hitchcock, John P. Hazzard, V, and Kenneth M. Moffitt, all of Columbia, for Respondent McConnell.

Justice KITTREDGE.

Petitioner Darrick Jackson, Mayor of the Town of Timmonsville, brought this action seeking a declaratory judgment in the Court's original jurisdiction that Governor Sanford's veto of certain appropriations to the State Budget and Control Board was unconstitutional.[1] Petitioner also challenged the Board's use of certain budget provisos to transfer funds out of the Rural Infrastructure Bank Trust Fund in order to cover the loss of funding that resulted from the veto.[2] We find the

---

[1]. Respondents Fusco, Chellis, Leatherman, Harrell, Cooper, and McConnell join Petitioner in asserting that the veto was unconstitutional.

[2]. Petitioner argued the transfer of funds violated the separation of powers mandated by article I, section 8 of the South Carolina Constitution because the Budget and Control Board transferred and expended

Governor's veto unconstitutional and therefore do not reach Petitioner's challenge to the Board's use of the budget provisos.

## I.

The annual appropriations bill for fiscal year 2010–2011 allocated $248,882,042 to the State Budget and Control Board ("the Board"), $25,234,009 of which was to be drawn from the General Fund. Some of the Board's expenditures were to be financed entirely from the General Fund, while other expenditures were financed using other sources or a combination of sources. The bill set aside the amounts to be drawn from the General Fund in a separate column. In another column, the bill listed the total appropriation for each expenditure, reflecting both General Funds and funds from other sources. The bill did not include separate columns delineating the amounts to be drawn from each of the other sources. *See* Act No. 291, Part 1A §§ 87–88, 2010 S.C. Acts —— (identifying the various sources of funding reflected in the appropriations bill).

In his Veto 52, Governor Sanford purported to veto the entire amount of General Funds appropriated to the Board. In his accompanying veto message, Governor Sanford stated the Board had "over $1 billion in carry-forward funds" and could use "available funds and ... cost-cutting measures" to "sustain [the] agency ... over the next fiscal year." The House of Representatives sustained this veto.

Following the veto, the Board identified another source for part of the vetoed funds by using flexibility provisos included in the appropriations act. Relying on these provisos for authority, the Board transferred the full balance out of the Rural Infrastructure Bank Trust Fund (approximately $13.3 million) and used that money for "payroll and essential operating costs," which would have been funded by the General Funds appropriated by the General Assembly.

Petitioner brought this action seeking a declaratory judgment that the Governor's Veto 52 was invalid and that the

money for a purpose other than the one assigned by the General Assembly. In addition, Petitioner argued the budget provisos, as applied, were an unconstitutional delegation of legislative power.

transfer of funds from the Rural Infrastructure Bank Trust Fund via the provisos was unconstitutional.[3]

## II.

Article IV, section 21 of the South Carolina Constitution provides in relevant part:

Every bill or joint resolution which shall have passed the General Assembly . . . shall, before it becomes a law, be presented to the Governor, and if he approves he shall sign it; if not, he shall return it, with his objections, to the house in which it originated, which shall enter the objections at large on its Journal and proceed to reconsider it. . . .

Bills appropriating money out of the Treasury shall specify the objects and purposes for which the same are made, and appropriate to them respectively their several amounts in distinct items and sections. If the Governor shall not approve any one or more of the items or sections contained in any bill appropriating money, but shall approve of the residue thereof, it shall become a law as to the residue in like manner as if he had signed it. The Governor shall then return the bill with his objections to the items or sections of the same not approved by him to the house in which the bill originated, which house shall enter the objections at large upon its Journal and proceed to reconsider so much of the bill as is not approved by the Governor. . . .

▆▆▆ "The veto power can be exercised only when clearly authorized by the constitution, and the language conferring it is to be strictly construed." *Drummond v. Beasley*, 331 S.C. 559, 564, 503 S.E.2d 455, 457 (1998). The veto power is "a negative power to void a distinct item." *Id.; cf. State ex rel. Long v. Jones*, 99 S.C. 89, 92, 82 S.E. 882, 883 (1914) (holding that when a veto was sustained "everything embraced in that

---

3. Petitioner asserted standing on the ground that the Town of Timmonsville is in need of financial assistance to improve its water and wastewater treatment infrastructure, and therefore, "interested in monies appropriated by the Legislature for rural infrastructure development." None of the Respondents have argued in their briefs that Petitioner lacks standing. *See Bardoon Properties, NV v. Eidolon Corp.*, 326 S.C. 166, 169–71, 485 S.E.2d 371, 373–74 (1997) (explaining that "a party's lack of standing as a real party in interest" does not deprive the court of subject matter jurisdiction).

item failed to become law"). In *Drummond v. Beasley,* we explained that the Governor may not "modify legislation rather than nullify legislation" by removing conditions and restrictions on expenditures while leaving the expenditures themselves intact. 331 S.C. at 560 n. 1, 563–64, 503 S.E.2d at 456–57. The Florida Supreme Court has explained:

> [T]he veto power is intended to be a negative power, the power to nullify ... legislative intent. It is not designed to alter or amend legislative intent.... [T]he veto must, in effect, destroy the fund. Otherwise, the governor could legislate by altering the purpose for which the money was allocated.

*Brown v. Firestone,* 382 So.2d 654, 664–65 (Fla.1980).

■ We apply a "common sense construction" when interpreting the General Assembly's obligation to organize appropriation bills into "distinct items or sections" and when interpreting the power of the Governor to veto such "items or sections." *E.g., S.C. Coin Operators Ass'n v. Beasley,* 320 S.C. 183, 187, 464 S.E.2d 103, 105 (1995); *Cox v. Bates,* 237 S.C. 198, 218–20, 116 S.E.2d 828, 836–37 (1960).

## III.

■■ The dispositive question before the Court may be framed in one of two ways, either of which compels a finding of an unconstitutional veto. First, a Governor is constitutionally permitted to veto an item in its entirety, but not partially. Stated differently, we must determine whether Veto 52 was a nullification of legislation or a modification of legislation. Putting these concepts together, the rule of law is that a veto of an item in its entirety is a nullification, while a veto of only part of an item is a modification. If a nullification, Veto 52 is constitutional; if a modification, Veto 52 is unconstitutional.

We begin with defining an "item" [4] for constitutional purposes. Our constitution uses the term "item" to embrace a specified sum of money together with the "object and purpose" for which the appropriation is made. S.C. Const. art. IV, § 21. Our case law is in accord. *State ex rel. Walker v.*

---

4. We are not presented with a dispute over the meaning of the term "sections."

*Derham,* 61 S.C. 258, 262, 39 S.E. 379, 380 (1901) (defining the act of appropriation as "to designate some specific sum of money for a particular purpose or individual"). Other jurisdictions have employed similar definitions for the term "item." *E.g., Henry v. Edwards,* 346 So.2d 153, 157 (La.1977) ("[T]he word 'item' signifies a sum of money dedicated to a specific purpose, a separate fiscal unit."); *Brault v. Holleman,* 217 Va. 441, 230 S.E.2d 238, 242 (1976) (defining an item of appropriation as "an indivisible sum of money dedicated to a stated purpose").

▮▮▮ Petitioner's first argument focuses on the spatial format of the appropriations bill into *columns* as opposed to *lines.* Petitioner contends the Governor could veto only *lines* of an appropriation bill, not *columns.* This argument appears to be premised on the notion of a Governor's "line item veto." To be sure, the phrase "line item veto" has currency as a colloquial expression, but it is not part of our constitutional framework. Our constitution permits the Governor to veto "items or sections" of bills that appropriate money, but it does not require that these items or sections be organized into lines. Thus, we reject Petitioner's argument and agree with the Governor that the spatial arrangement of numbers on the page does not dictate the definition of an "item." [5]

▮▮▮ While we agree that the arrangement of information in a column, rather than in a line, is irrelevant, we disagree with Governor Sanford and Respondent Eckstrom that the column designating the amount of General Funds to be expended was a standalone "item" that could be vetoed without vetoing the objects and purposes to which those General Funds were devoted. The Governor vetoed one source of appropriated

---

5. There is no assertion here that the General Assembly failed to comply with its constitutional mandate to "specify the objects and purposes for which the [appropriations] are made, and appropriate to them respectively their several amounts in distinct items and sections." S.C. Const. art. IV, § 21. It is axiomatic that the General Assembly cannot ignore its constitutional mandate and present an appropriations bill in a manner that forecloses the Governor's veto authority. *Cf. Henry,* 346 So.2d at 158 ("The legislature cannot by location of a bill give it immunity from executive veto.").

funds while leaving the remainder of the total appropriation, and the specified "objects and purposes" of the appropriation, intact.[6]

The Governor attempted to veto funds arising from a particular source, but he did not veto the purpose to which those funds were allocated. The net result, then, was that the total appropriation for each of the Board's programs, positions, and expenses was reduced by the amount the General Assembly had designated to be drawn from the General Fund, but the programs, positions, and expenses themselves were not eliminated.[7] This was an improper modification of legislation. *See Drummond*, 331 S.C. at 564, 503 S.E.2d at 457 (finding a veto invalid because it "modif[ied] legislation rather than nullif[ied] legislation"). As the Florida Supreme Court has explained:

What the Governor requests is little different than the power to *reduce*. In each of the line items at issue here, the legislature has identified only one purpose, which will be achieved with sums taken from several separate funding sources. The Governor argues essentially that we must consider each of these sources to be a "fund" subject to veto. We, however, believe that the existence of such a fund cannot be determined solely by reference to the fact that a specific sum is stated in the Act itself. There also must be consideration of the legislature's *purpose.*

6. The Governor has argued that because the total amount appropriated to a particular purpose often includes both federal and state funds, it might be impossible as a practical matter to veto the entire amount. The Governor's power to veto "items or sections" expressly extends to all "[b]ills appropriating money out of the Treasury." S.C. Const. art. IV, § 21. Federal funds are deposited into the state treasury and allocated in the annual appropriations bill. S.C.Code Ann. § 2–65–20 (2005) (requiring the General Assembly to "appropriate all anticipated federal and other funds for the operations of state agencies in the appropriations act"); S.C.Code Ann. § 11–13–45 (Supp.2009) ("All federal funds received must be deposited in the State Treasury, if not in conflict with federal regulations, and withdrawn from the State Treasury as needed. . . ."). Thus, we do not believe the Governor would be thwarted in the exercise of his veto power by the mere fact that a particular item included both federal and state funds.

7. In some instances, the General Fund accounted for the entire budget for a particular program. Nevertheless, the Governor did not veto these programs; he vetoed only their funding.

... If the legislature's purpose is to expend a specific amount of money for a single stated purpose, then the Governor has no authority to reduce that amount by vetoing one of several funding sources. The Governor must veto all or none.

Any requirement less than this would seriously erode the legislature's power to decide the level of appropriations. Permitting the vetoing of individual funding sources comes too close to authorizing the Governor to reduce appropriations.

*Florida House of Representatives v. Martinez*, 555 So.2d 839, 845-46 (Fla.1990) (emphasis in original); *see also Stong v. People ex rel. Curran*, 74 Colo. 283, 220 P. 999, 1000, 1003 (1923) (holding the Colorado governor "ha[d] no power to veto a portion of a separate, distinct, and indivisible item," and therefore, did not have the power to veto part of a salary while leaving the salaried position intact).

■ The net effect of Veto 52 was a veto of *part* of an item, resulting in modification of legislation, which is an unconstitutional exercise of the veto power. *Cf. Colorado General Assembly v. Lamm*, 704 P.2d 1371, 1384 (Colo.1985) ("[W]e conclude that the source of funding is as much a part of an item of appropriation as the amount of money appropriated and the purpose to which it is to be devoted. It cannot be removed from the bill without affecting the legislature's intendment in enacting the measure."). As correctly stated in Senator McConnell's brief, "[i]f a line in the appropriations bill is vetoed in a constitutional manner and the veto is sustained, then the line is stricken and there is no longer any authority to expend state funds for the purpose stated on the line."

The Governor seeks refuge in the contention that Veto 52 is consistent with the historical practice of South Carolina Governors. Because other Governors have exercised their veto authority in a similar manner, the argument goes, the Court should defer to the historical practice. The Governor's position has ostensible merit, for "[l]ong established practice has great weight in interpreting constitutional provision[s] relative to executive veto power." *Coin Operators*, 320 S.C. at 188,

464 S.E.2d at 105. However, we are not persuaded that the practice of vetoing only one of several sources of funds without vetoing the corresponding objects and purposes is as well rooted in our history as the Governor suggests. The Governor cites in his brief to vetoes in 1935 and 1948 as similar to Veto 52. We do not read the cited 1935 and 1948 vetoes as similar. The acts at issue did not list General Funds separately from any other funds. *See* Act No. 347, 1935 S.C. Acts 505, 546; Act No. 849, 1948 S.C. Acts 2091, 2167–69. These examples and others present vetoes of the total funding and the corresponding objects and purposes. Thus, we are not convinced that the interpretation advanced by the Governor is as "long established" as he contends. In any event, a veto of only one of several sources of funds is patently in conflict with the Governor's authority under our constitution.

## IV.

We find the Governor's veto of only the General Fund portion of the appropriation to the Budget and Control Board was unconstitutional because it exceeded the authority granted to him by article IV, section 21 of the South Carolina Constitution. The Governor is empowered to veto "items," which comprise both the designated funds and the objects and purposes for which the appropriation is intended. By vetoing only one of several sources of funds, the Governor vetoed only part of an item, rendering the veto unconstitutional. Having declared Veto 52 unconstitutional, we hold the General Assembly's appropriation of General Funds to the Budget and Control Board is effective and has the force of law. We, therefore, need not reach Petitioner's challenge concerning the provisos.

**JUDGMENT FOR PETITIONER.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.